[No. 14866. Department One. April 3, 1919.]

THE STATE OF WASHINGTON, *Appellant*, v.
JOE H. ASTIN, *Respondent*.[1]

ADULTERY (2)—COMPLAINT BY INJURED SPOUSE—RIGHT TO DISMISS. Under Laws 1917, p. 341, providing that no prosecution for adultery shall be commenced except on complaint of the injured spouse, such spouse, having made the complaint, has no right to dismiss it or control the prosecution (CHADWICK, C. J., and TOLMAN, J., dissent).

Appeal from a judgment of the superior court for King county, Jurey, J., entered May 15, 1918, dismissing a prosecution for adultery, on motion of the complaining spouse. Reversed.

*Alfred H. Lundin* and *Lane Summers,* for appellant.
*Fred C. Brown,* for respondent.

MACKINTOSH, J.—Chapter 98, Laws 1917, page 341, provides that no prosecution for adultery shall be commenced except on complaint of the husband or wife injured. Such a complaint having been filed and the prosecution thus begun, can the husband or wife discontinue and terminate that prosecution by moving to have it dismissed, or in any way interfere in the conduct of the case by the prosecuting attorney?

[1]Reported in 180 Pac. 394.

The purpose of the act is, as stated in the case of *State v. La Bounty*, 64 Wash. 415, 116 Pac. 1073, to put the commencement of the prosecution in the exclusive control of the injured spouse, in order that reconciliation might take place free from publicity and notoriety, but this reason no longer exists when the publicity and notoriety have occurred by the filing of the complaint or information, which is necessarily of record. The state of Iowa has a statute substantially the same as ours, and this question has been passed upon in that jurisdiction. In *State v. Baldy*, 17 Iowa 39, the court held:

"This statute does not require that the husband or wife shall continue to prosecute to conviction, but it is sufficient if the prosecution is commenced on their complaint. After it is thus *commenced*, it may be continued without further co-operation on their part. As it appears that this prosecution was commenced on the complaint of the wife, it was not error to continue the prosecution to final determination, even without her presence or consent."

In the case of *State v. Leek*, 152 Iowa 12, 130 N. W. 1062, the same court said:

"The fact that she subsequently relented and desired that the defendant should not be convicted would not require the dismissal of the case as to defendant, if it had been properly instituted on her complaint."

The case, after the complaint is filed, is no longer a matter of private concern but has partaken of all the attributes of a public offense, and the injured spouse should have no more right to control the further disposition of the case than should the complaining witness in any other criminal action. To hold otherwise would be to open the door of a treasure room for a horde of blackmailers. A tender solicitude for persons whose misfortunes have already been

exposed to public view by the filing of criminal charges certainly should not lead to the result that extortionists are to be equipped with a new set of weapons. In no other class of litigation is the opportunity for blackmail already so great, and to increase it by putting into the power of the complaining witness not only the institution, but the entire destiny, of the prosecution, is to close our eyes to a grievous situation and add to its immense possibilities for the evilly disposed. If the complaining witness can dismiss the action at his pleasure, he may enjoy that right until final judgment; before, during, or after trial, at his whim, the defendant may be discharged; what becomes then of the argument that the right to control the action rests with the complaining witness for the purpose of protecting innocent persons from the publicity attached to such actions? To allow such a result, especially in a class of crime where the making of complaint is so subject to abuse, is abhorrent to the fundamental principles of law and morals.

The only authority holding to the contrary of the views here expressed is a three-line opinion by Judge Cooley, in *People v. Dalrymple,* 55 Mich. 519, 22 N. W. 20, where that distinguished judge decided that the dismissal at the request of a complaining witness, though against the letter, was not against the spirit of a statute similar to ours; a decision not consistent with rules of statutory construction, which have never received better expression than that given by the same authority. The decision can only be explained by recalling that even great Homer is reputed to have sometimes nodded.

The lower court was in error in dismissing the information in this case, and its action in so doing is reversed.

MITCHELL and MAIN, JJ., concur.

Chadwick, C. J. (dissenting)—The provision of our law upon which the trial judge based his ruling is ch. 98, p. 341, Laws of 1917, which is as follows:

"*Provided,* That no prosecution for violation of the provisions of this section shall be commenced except on complaint of the husband or wife made before a committing magistrate, or by filing an affidavit with the prosecuting attorney, nor after one year from the commission of the offense."

Adultery is not a crime against the state. It is an offense against the unoffending spouse, and it is wisely provided, as was consistent with the ancient law, that no grand jury can indict, no person can make charge, and no prosecuting attorney can present by information, a defendant upon a charge of adultery unless such prosecution is commenced upon the complaint of the husband or wife, and then only upon complaint before a committing magistrate, or by the filing of an affidavit with the prosecuting attorney within a time limited to one year. The reason for this exception to the general theory pertaining in all criminal statutes is nowhere better stated than by Judge Dunbar in *State v. La Bounty,* 64 Wash. 415, 116 Pac. 1073. It will be observed that the court said in that case that it was,

"The evident intention of the legislature which incorporated the provision into the law to regard adultery as a crime against the husband or wife personally rather than as a crime against society, leaving the husband or wife to condone the offense if he or she desired to do so, unembarrassed by the publicity incident to the prosecution instituted by the officers of the state."

The court used the word prosecution advisedly. It used it in the sense of a trial rather than in the sense of filing a complaint with a magistrate or an affidavit with a prosecuting attorney.

The complaining witness filed an affidavit in which he says:

"That the said Laura B. Wilcox is the wife of affiant; that he was persuaded to file the said charge against the said parties at a time when he was worried over his domestic troubles and not in a normal condition, and was over-persuaded to make said charge against his own feelings and wishes, and that if he had had an opportunity to think the matter over without the influence of third parties, he would not have preferred said charge.

"That since said time . . . affiant . . . has condoned the offense of his said wife and Joe H. Astin, and a reconciliation with his said wife Laura B. Wilcox has been effected by affiant. That the said Laura B. Wilcox and affiant are the parents of one child of the age of six years; that in order to effect a complete harmony between said Laura B. Wilcox and affiant, affiant desires that the above entitled action as to Joe H. Astin be dismissed and no further prosecution be had in the above cause. That Laura B. Wilcox's parents are living, and in ignorance of the pending suit; that she and affiant have a number of relatives and a great number of friends that will obtain knowledge of said suit if it is brought to trial, and will cause them considerable notoriety and painful publicity, and will destroy the domestic happiness of affiant and bring disgrace and ridicule upon them and upon their minor child, if said cause is further prosecuted, and affiant believes that his future domestic happiness and the welfare of their child depends upon the discontinuance of said action."

It is said that there is a division of authority upon the question at bar. That division, if any there be, is limited to the two states of Iowa and Michigan. 2 C. J. 18; 1 Standard Ency. Proc. 598.

*State v. Baldy,* 17 Iowa 39, is seized upon as the *ultima ratio* of the law, yet there is not one case to be found in the reports of other states that follows it. And as I shall presently show, if the case holds what

the majority says it holds, it has never been followed
in the state of Iowa. The court misconceived the pur-
pose of the statute and perhaps unconsciously de-
parted from the reason and the spirit of the law, and
in seeming anxiety to find a beaten path, switched the
case upon the main track of the criminal law. To say
that a law designed for the protection of the home may
be nullified by resort to the rules of criminal proce-
dure is to stand upon the letter of the statute—the
word "commence" alone—when, of all laws that are
in the books, this law, being grounded in a public pol-
icy, should have the sanction of its spirit rather than
be shackled by its letter.

If an action cannot be "commenced" without the
complaint of the injured spouse, why, in reason, should
it be continued for trial, it being a crime against the
spouse personally rather than a crime against society,
if that spouse is willing to forgive and save the no-
toriety and shame that must come to the wife and
possibly to his children by dragging a purely per-
sonal offense through the courts?

The prosecuting attorney cites a number of Iowa
cases. The only subsequent reference to *State v.
Baldy* is found in *State v. Briggs*, 68 Iowa 416, 27
N. W. 358. The question in that case was whether it
was necessary to aver in the indictment, or show by
an endorsement thereon, that it was found at the in-
stance of the injured spouse. The court held that it
was not so necessary, and in the later case of *State v.
Ledford*, 177 Iowa 528, 159 N. W. 187, the court held,
upon the authority of the *Briggs* case and others, that,
although the fact that the case had been brought upon
the complaint of the injured spouse was not an essen-
tial element of the charge to be proved beyond a rea-
sonable doubt, it was nevertheless an essential evi-

dentiary fact to be proved by a preponderance of the testimony. These cases oppose the rule laid down in the *La Bounty* case. So that it may be said that, upon the point at issue, the case of *State v. Baldy* stands alone.

I have thus far given that case the credit which counsel and the writer of the majority opinion give it. But that case does not hold what the quotation makes it seem to hold. The question before the court was not whether a charge of adultery could be dismissed at the request of the injured spouse, but whether a case could proceed where the injured wife was not examined and did not appear as a witness at the trial. The wife had instituted the proceeding; she was not in court asking that it be dismissed or discontinued. So far as the record goes, she was willing for it to proceed to the end. What the ruling of the court may have been if the wife had appeared and requested that the case be discontinued, there is nothing in the case to advise us, so that it may be truthfully said that the only authority in the books in point upon this case is the case of *People v. Dalrymple,* and it should be followed, for its reasoning is unassailable and its spirit is pure.

In *State v. Leek,* 152 Iowa 12, 130 N. W. 1062, the court uses the language that is used in the majority opinion, but it does not appear that any motion had been made for a dismissal of the action or that the court would have held it to have been an abuse of discretion on the part of the trial judge if he had dismissed the case if a motion to discontinue had been made.

In Michigan, the statute provided that a prosecution for adultery can only be "instituted" on the complaint of the injured spouse. In passing upon the same question, the court said:

"Notwithstanding she filed a paper saying 'that for the sake of her children and her own peace and happiness she most respectfully asked that Madison Dalrymple may be discharged, and that said case may be discontinued,' the prosecuting attorney pressed the case to a conviction."

The learned chief justice of the court passed the case in less than three lines:

"Perhaps the letter of the statute was not disregarded in this action, but its spirit was. Conviction must be set aside and the respondent discharged." *People v. Dalrymple,* 55 Mich. 519, 22 N. W. 20.

The *Dalrymple* case was followed in *Hosford v. Gratiot Circuit Judge,* 129 Mich. 302, 88 N. W. 627.

My criticism of *State v. Baldy,* 17 Iowa 39, and the cases following it, is not met in any way; and the decision of Judge Cooley, being the only case in point in all the books, is brushed aside with a witticism of the Homeric era. This, if it be logic, is most faulty and ephemeral. Homer may have nodded betimes, but he was not asleep when his genius flashed and he gave his Odyssey to the world. Judge Cooley no doubt took his rest, but the spirit was not asleep when he imposed the true intent and meaning upon a statute which, if not so construed, can serve no real purpose and may as well never have been written. But these considerations do not arise to the dignity of argument on either side.

The other reason given for rejecting Judge Cooley's opinion is that it is "not consistent with rules of statutory construction which have never received better expression than that given by the same authority." It is true that the genius of Judge Cooley is a shining light in the field of statutory construction, and years will pass before his great work will cease to be the resort of groping intellects. It would seem that, with

his experience and great learning, he would instinctively grasp the right rule whether sleeping or waking, but the real fault of the majority lies in the fact that they have found resort in the rule that statutes in derogation of the common law are to be construed strictly. It has failed to appreciate the undeniable truth that adultery was not a crime at common law.

To show that the prosecuting attorney has failed utterly to appreciate the nature of a case of this kind and the spirit which sustains the statute, it is only necessary to quote from his brief, wherein he says:

"Boiled down, the one affidavit painted a weak husband's change of heart and the other sketched a settled purpose with public policy for a background. Neither contained any statement of the proof or disproof of the crime alleged in the information; neither drew even an outline of the merits of the case."

I cannot follow the prosecuting attorney. The fact that a husband, for the sake of his child and to save his wife's parents a knowledge of her shame, asks that a charge of adultery be dismissed may be the part of weakness; but it seems to me that a man who is willing to take his burden and carry it alone, without the aid of criminal prosecutors or the idly curious public, is possessed of a courage that few men know. The law does not require that he disprove the crime by affidavit. It is enough if it appear by affidavit or otherwise that he would save the embarrassment incident to a prosecution. *State v. La Bounty, supra.*

In any event, it should be held that the dismissal of a charge of adultery on the request of an injured spouse is a matter within the discretion of the trial court.

The writer of the majority opinion falls into most grievous error when he says:

"The case, after the complaint is filed, is no longer a matter of private concern but has partaken of all the attributes of a public offense, and the injured spouse should have no more right to control the future disposition of the case than should the complaining witness in any other criminal proceeding."

The premise is wrong in that it gives to adultery the status of a crime at common law. It is made so only by statute and a prosecution is put in the keeping of the injured spouse. A charge of adultery never ceases to be a matter of private concern. It is so far removed from the ordinary crime that no cases hold that the information must charge that the act was either unlawful, wilful, or felonious. The statute does not make the exception that the majority makes, nor does it put a limitation upon the right of the injured spouse to save to himself or herself the embarrassment incident to a prosecution, which is the purpose of the law, at any stage of the case. The law does not say that we may depart from the spirit of the law, and hold a forgiving spouse to a prosecution that must, from the very fact of the publishing of the details of the crime in open court, tend most strongly to a final disruption of the home; and most certainly to the shame of innocent children, if there be any children. If the law does not say that a case must be continued, why should we? And to what end must it proceed—that a prosecutor may dangle a scalp at his belt; that the public may feed upon the blood that flows from broken hearts; that an offense that is personal (*State v. La Bounty, supra*) may, by a killing of the spirit of the law, become a written monument to blazon those errors that come of the frailties and weaknesses that our Mother Nature has burdened her children with.

If the injured one is willing to forgive and forget, the law—there being no public interest in the crime charged—should not be less merciful. A charge may be forgotten, but the hurts and wounds that follow a public trial are rarely healed.

TOLMAN, J., concurs with CHADWICK, C. J.