Submitted on briefs at Pendleton October 25, reversed with directions to discharge defendant December 14, 1920.

## STATE *v.* STEVENSON.

(193 Pac. 1030.)

**Criminal Law—Compliance With Statute must be Shown Before Preliminary Statement to Committing Magistrate may be Admitted.**

1. Before the statutory statement made by a defendant at his preliminary examination before a committing magistrate can be admitted in evidence against him at his trial on a criminal prosecution, it must affirmatively appear that notice of right to waive statement required by Section 1781, Or. L., was given.

**Criminal Law—Confession Made to District Attorney Admissible as Extrajudicial Confession and not Under Statute.**

2. Where defendant's alleged confession offered and received in evidence was made to the district attorney at his office in presence of the sheriff and deputy, and was no part of defendant's preliminary examination, it is admissible, if at all, as an extrajudicial confession, and not under Section 1781, Or. L.

**Criminal Law—"Confession" Defined—"Judicial Confession"—"Extrajudicial Confession."**

3. A "confession" is the voluntary admission or declaration made by a person who has committed a crime or misdemeanor to another

2. When confession is admissible though made to an officer, see note in 57 Am. Rep. 839.

Authorities discussing the question of admissibility of confessions to persons in authority are collated in notes in 18 L. R. A. (N. S.) 843, and 50 L. R. A. (N. S.) 1088.

of the agency or participation which he had in it; "judicial confessions" being those made before a magistrate or court in due course of legal proceedings, and "extrajudicial confessions" being those made elsewhere.

### Criminal Law—Confession Inadmissible Where Obtained by Inducement of Person in Authority.

4. The common-law rules governing the admissibility of confessions are still in force in Oregon, so that a confession is inadmissible where obtained by temporal inducement, by threats, fear, promises or hope of favor held out to the party in respect to his escape from the charge against him by a person in authority.

### Criminal Law—Determination as to Competency of Confession not Disturbed Unless Clearly Erroneous.

5. The competency of a confession as evidence is in the first instance addressed to the court, and its determination will not be disturbed on appeal, unless the record discloses clear and manifest error.

### Criminal Law—Confession While in Custody not Inadmissible.

6. The fact that defendant's confession was made when he was in the custody of officers does not render the confession any the less admissible, it not having been induced by such custody.

### Criminal Law—Extrajudicial Confession of Defendant Written Out by District Attorney and Signed Admissible.

7. Confession of defendant charged with adultery, written out by the district attorney and given to defendant to read, he signing it in the presence of two witnesses, *held* admissible as an extrajudicial confession, fully meeting the requirements as to competency.

### Statutes—Legislative Intent Controls Construction.

8. The legislative intent always controls construction.

### Courts—Constructions of Statute by Circuit Courts Do not Bind Supreme Court.

9. The constructions placed on the adultery statute by the Circuit Courts of the state do not bind the Supreme Court, but the rulings are persuasive, and, where the construction has been almost uniform for more than 50 years, it should not be set aside without grave reasons.

### Adultery—Offended Wife or Husband has Exclusive Privilege to Institute Prosecution.

10. Under Section 2072, Or. L., when the crime of adultery has been committed between a married man and a married woman, the right to complain and institute prosecution on a charge of adultery against either of the guilty parties is the exclusive privilege of the unoffending wife or husband of the defendant proceeded against.

---

4. Admissibility of confession induced by person in authority, see note in 6 Am. Rep. 246.

10. On the question of construction and effect of provisions requiring prosecution to be upon complaint of husband or wife, in action for adultery, see note in 19 L. R. A. (N. S.) 786.

Right of injured spouse to discontinue prosecution for adultery, see note in 4 A. L. R. 1340.

From Malheur: DALTON BIGGS, Judge.

In Banc.

William Stevenson, a married man, the defendant and appellant, was indicted by the grand jury of the Circuit Court of the State of Oregon in and for the county of Malheur, charged with the commission of the crime of adultery with one Ruth Lackey, wife of Herbert Lackey, the complaining witness. Upon trial had, the defendant was convicted and sentenced to serve a term of not more than six months in the penitentiary, from which judgment he appeals to this court.

The principal convicting evidence given at the trial was an alleged confession and the testimony of his accomplice. The defendant objected to the introduction of the confession as evidence, and saved an exception to the ruling of the court thereon. At the beginning of the trial, it was stipulated that the prosecution was commenced upon the complaint of Herbert Lackey, spouse of Ruth Lackey. Defendant objected to the introduction of any evidence in the case, for the reason that the prosecution was not based upon the complaint of the wife of the defendant. This question was likewise reserved by asking the court for an order directing the jury to return a verdict of not guilty because "the state has failed to prove that the prosecution was brought upon the complaint of the wife of the defendant," and was saved a third time by excepting to an instruction of the court to the effect that—

"It is sufficient, if you find that Ruth Lackey is the wife of Herbert Lackey, that the prosecution was instigated or instituted by Herbert Lackey, her husband."

REVERSED AND REMANDED WITH DIRECTIONS.

For appellant there was a brief submitted over the names of *Mr. Wm. E. Lees, Mr. W. H. Brooke* and *Mr. P. J. Gallagher.*

For respondent there was a brief prepared and submitted by *Mr. Ralph W. Swagler,* District Attorney.

BROWN, J.—Although witness Harry Farmer gave some testimony tending to prove opportunity to commit the offense, a conviction was had in this cause upon the testimony of the defendant's accomplice, corroborated by a confession made in the district attorney's office. The defendant challenged the admissibility of the confession, especially upon the ground and for the reason that the said confession or statement was not taken in accordance with the provisions of Section 1781, Or. L., providing as follows:

"When the examination of the witnesses on the part of the state is closed, the magistrate must inform the defendant that it is his right to make a statement in relation to the charge against him; that the statement is designed to enable him, if he sees fit, to answer the charge and explain the facts alleged against him; that he is at liberty to waive making a statement, and that his waiver cannot be used against him on the trial."

The objection, as we take it from the record, was as follows:

"Mr. Gallagher.—Now, I desire to object to the introduction of this testimony because there has been no proper foundation made for the introduction of it, because it appears from the testimony so far that this statement was made either immediately after * * or perhaps before the preliminary hearing had been dispensed with and pending his procuring bail, while he (defendant) was still in custody of the officers of the law, and it has not been shown that the prelimin-

ary hearing was through at the time this framed-up written statement was made.''

1, 2. The record discloses that the confession offered and admitted in evidence was not made under the provisions of Section 1781, Or. L., and is not governed by the rule there set down. It is true, however, that, before the statutory statement made by a defendant at his preliminary examination before a committing magistrate can be admitted in evidence against him at his trial on a criminal prosecution, it must affirmatively appear that all the commands of Section 1781, Or. L., have been executed. To this effect, see *State* v. *Hatcher,* 29 Or. 311 (44 Pac. 484); *State* v. *Andrews,* 35 Or. 391 (58 Pac. 765); *State* v. *Scott,* 63 Or. 444 (128 Pac. 441). The alleged confession that was offered and received in evidence was made to the district attorney at his office, in the presence of the sheriff and deputy, and was no part of the preliminary examination. If the confession is admissible as evidence, it is not because of the provisions of Section 1781, Or. L., but because of the fact that it is an extrajudicial confession.

Preliminary to the introduction of the confession into the record of the trial, the sheriff testified that he was present at the defendant's preliminary examination held at Ontario on the sixteenth day of December, 1919, and, in response to interrogations put by the district attorney, testified as follows:

''Q. Immediately after the preliminary examination, what, if anything, was done?

''A. We went over for lunch first.

''Q. Who went to lunch?

''A. Yourself and Judd Heep, Bill Stevenson (defendant), Mr. Farmer, and me.

''Q. That party all go together?

"A. All together; yes, sir.

"Q. And after lunch, where did that party go?

"A. Went across and went up to your office.

"Q. Was there anything said after the preliminary by Stevenson with reference to his signing a statement of his—or a confession?

"A. Why, there was some talk in regard to it. I don't know just the words that was used. * * I don't know that I could say exactly what he said. All that was said really started from what was said over in the preliminary hearing. That whole conversation started from the statement that he made there. That was talked over after that. * * He signified his willingness to sign a statement.

"Q. I hand you this, marked State's Ex. 1, for Ident., and ask you to examine this and state if this was signed by the defendant in your presence as a witness.

"A. Yes, it was.

"Q. Was that read by the defendant before he signed it in your presence, handed to him for reading?

"A. It was handed to him for reading; yes, sir.

"Q. And did he read it, as far as you know?

"A. Well, as far as I know; yes.

"Q. Was there at that time, or at any other time in your presence, any statement made to this defendant offering him immunity or reducing his punishment, or any threats of prosecution such as to induce the making of this statement?

"A. None.

"Q. Or anything that would tend to produce such a statement?

"A. No.

"Q. And you were present at the time of it being prepared and while he signed it?

"A. I was."

Witness testified that he thought Mr. Swagler, the district attorney, wrote the statement that the prisoner

signed, and the prosecutor admitted that he prepared the writing.

Witness Farmer testified:

"Q. Were you present at all times when this confession was being prepared and while the defendant was there?

"A. Yes, sir.

"Q. Was there any promises of any nature or character offered to him if he made a confession of this character?

"A. No, sir; I think not. * *

"Q. Was there any promise of reward made to him for signing a confession or this confession?

"A. No, sir; not in my presence.

"Q. Was there any promise of immunity made to him, or protection or lessened punishment, by reason of signing that statement?

"A. No, sir; not that I know of.

"Q. Was there any threat or statements sounding like threats that induced him to sign that confession?

"A. Nothing that I seen or heard.

"Q. And you were there, present, during the time that was being prepared, in the same room, and signed as a witness immediately afterward, did you not?

"A. Yes, sir."

3. The term "confession," in criminal law, has been defined to be "the voluntary admission or declaration made by a person who has committed a crime or misdemeanor, to another, of the agency or participation which he had in the same." "Judicial confessions" are those made before a magistrate or in court in the due course of legal proceedings. "Extrajudicial confessions" are those made by the party elsewhere than before a magistrate or in open court: 1 Bouvier, 588.

4. The common-law rules governing the admissibility of confessions are still in force in Oregon.

Therefore a confession is not admissible in evidence where it is obtained by temporal inducement, by threats, fear, promise, or hope of favor held out to the party in respect to his escape from the charge against him by a person in authority: *State* v. *Wintzingerode,* 9 Or. 153; *State* v. *Garrison,* 59 Or. 440 (117 Pac. 657); *State* v. *Morris,* 83 Or. 429 (163 Pac. 567); *Garrard* v. *State,* 50 Miss. 147; *Flagg* v. *People,* 40 Mich. 706. It was held in the case of *State* v. *Moran,* 15 Or. 265 (14 Pac. 421), in an opinion by STRAHAN, J., that:

"Upon the trial of a criminal case, * * whenever a confession is offered in evidence against the accused, it becomes necessary for the court to ascertain and determine whether or not the confession has been obtained by the influence of hope or fear applied by a third person to the prisoner's mind. This inquiry is preliminary, and is addressed to the judge."

5. The foregoing statement of law is approved in *State* v. *Andrews,* 35 Or. 391 (58 Pac. 765); *State* v. *Rogoway,* 45 Or. 601 (78 Pac. 987, 81 Pac. 234, 2 Ann. Cas. 431); *State* v. *Blodgett,* 50 Or. 329 (92 Pac. 820); *State* v. *Spanos,* 66 Or. 118 (134 Pac. 6); and *State* v. *Morris,* 83 Or. 429 (163 Pac. 567). The competency of a confession as evidence is, in the first instance, addressed to the court, and its determination will not be disturbed on appeal unless the record discloses clear and manifest error: *State* v. *Rogoway,* 45 Or. 601 (78 Pac. 987, 81 Pac. 234, 2 Ann. Cas. 431); *State* v. *Blodgett,* 50 Or. 329 (92 Pac. 820); *State* v. *Spanos,* 66 Or. 118 (134 Pac. 6); *State* v. *Morris,* 83 Or. 429 (163 Pac. 567). In a specially concurring opinion in the case of *State* v. *Morris,* 83 Or. 429 (163 Pac. 567), Mr. Justice HARRIS says:

"This quality of voluntariness, so necessary to a confession, presents itself at two stages of a trial: (1) To the judge; and (2) to the jury. The judge passes upon the admissibility and the jurors are the exclusive judges of the weight and credibility of the confession. The decision of the judge is only preliminary while that of the jury is ultimate."

6, 7. It is urged, against the admission of the confession as evidence, that the defendant was in custody of the officers; but this fact does not render the confession any the less admissible: *State* v. *Rogoway,* 45 Or. 601 (78 Pac. 987, 81 Pac. 234, 2 Ann. Cas. 431); *State* v. *Blodgett,* 50 Or. 329 (92 Pac. 820); *State* v. *Scott,* 63 Or. 444, 449 (128 Pac. 441); *State* v. *Humphrey,* 63 Or. 540 (128 Pac. 824); *State* v. *Spanos,* 66 Or. 118 (134 Pac. 6); *State* v. *McPherson,* 70 Or. 371, 373 (141 Pac. 1018); *State* v. *Morris,* 83 Or. 429 (163 Pac. 567). The testimony shows that the confession was written out by the district attorney and given to the defendant to read, who signed it in the presence of two witnesses. The following is the language of Mr. Justice BEAN in speaking for this court in *State* v. *Morris,* 83 Or. 429 (163 Pac. 567):

"The rule is well settled that a confession taken down by someone else and read to and signed by the accused is as much his written declaration as one entirely prepared by his own hand would be; and this is true although his exact language is not reduced to writing. By signing it and adopting its language, he makes it his own."

It appears to us from the undisputed testimony of the witnesses that the confession offered and received in evidence was an extrajudicial confession, made by the defendant to the district attorney, and fully meets the requirements of law as to competency.

The next and only remaining question relates to the procedure in the prosecution of the crime of adultery. Who can institute a prosecution for the crime of adultery in this state when both parties to the offense are married? Section 2072, Or. L., provides, among other things, as follows:

"A prosecution for the crime of adultery shall not be commenced except upon the complaint of the husband or wife."

This clause of the adultery statute in substantially its present wording, first appeared in the Code of 1853, prepared by the Code commission authorized by an act of the territorial legislative assembly passed in January, 1853, entitled "An Act to Create a Board of Commissioners to Prepare a Code of Laws for the Territory of Oregon."

What constitutes the statutory offense of adultery, or the procedure for the prosecution thereof, has not received uniform decision among the courts of the several states of the Union. The difference of opinion among the courts as to what constitutes the offense or what is the proper procedure in the prosecution of the crime of adultery generally arises from the fact that the decisions are founded upon Codes of law materially different from each other. Accordingly, the doctrine announced in a particular case is dependent upon an individual statute under which the defendant is being prosecuted: *Commonwealth* v. *Call,* 21 Pick. (Mass.) 509 (32 Am. Dec. 284); *State* v. *Lash,* 16 N. J. Law, 380 (32 Am. Dec. 297); 1 Cyc. 953. While the crime of adultery is an offense against both the state and the innocent spouse in this state, yet according to the provisions of the statute of Oregon no grand jury can indict, nor can any person file an information before a magistrate charging

another with the crime of adultery unless such prosecution is commenced upon the complaint of the husband or wife, excepting when the crime has been committed with an unmarried female under the age of 20 years, then upon the complaint of the wife, or of a parent or guardian of such unmarried female. A provision prohibiting the commencement of a prosecution for the crime of adultery except upon the complaint of the husband or wife may be found in the statute of Washington, Iowa, Michigan, Minnesota, and North Dakota. The following cases illustrate the diversity of opinion relating to the competency of the complaining witness under like statutes: *State* v. *La Bounty,* 64 Wash. 415 (116 Pac. 1073); *State* v. *Astin,* 106 Wash. 336 (180 Pac. 394, 4 A. L. R. 1336); *State* v. *Roth,* 17 Iowa, 336; *Bush* v. *Workman,* 64 Iowa, 205 (19 N. W. 910); *State* v. *Loftus,* 128 Iowa, 529 (104 N. W. 906); *Bayliss* v. *People,* 46 Mich. 221 (9 N. W. 257); *People* v. *Davis,* 52 Mich. 572 (18 N. W. 362); *People* v. *Dalrymple,* 55 Mich. 519 (22 N. W. 20); *Wilson* v. *Daboll,* 104 Mich. 155 (62 N. W. 293); *State* v. *Brecht,* 41 Minn. 50 (42 N. W. 602); *State* v. *Wesie,* 17 N. D. 567 (108 N. W. 20, 19 L. R. A. (N. S.) 786). While passing, we will observe that under statutes similar to ours, providing that when the crime of adultery is committed between a married woman and an unmarried man, the man shall be deemed guilty of adultery, the prosecution may be instituted upon the complaint of the spouse of the woman with whom the crime was committed: *State* v. *Ayles,* 74 Or. 153 (145 Pac. 19, Ann. Cas. 1916E, 738); 1 Standard Proc. 598, citing *State* v. *Corliss,* 85 Iowa, 18 (51 N. W. 1154); *State* v. *Maas,* 83 Iowa, 469 (49 N. W. 1037); *State* v. *Mahan,* 81 Iowa, 121 (46 N. W. 855); *State* v. *Wil-*

*son,* 22 Iowa, 364; *People* v. *Davis,* 52 Mich. 569 (18 N. W. 362) ; *Bayliss* v. *People,* 46 Mich. 221 (9 N. W. 257) ; *Commonwealth* v. *Vance,* 29 Pa. Co. Ct. 257; *Commonwealth* v. *Nick,* 29 Pa. Co. Ct. 8.    Undoubtedly this is the law in Oregon.

Concerning the right to institute a prosecution, as in the case at bar, where both offending parties are married, there is a conflict of authorities construing statutes that are alike.    The provision of the statute that requires the prosecution to be instituted by the husband or wife of one of the offenders has been held to mean that the proceedings may be set in operation against one or both of the offending spouses by the husband or wife of either.    This rule was adopted by the Supreme Court of Michigan and followed by Minnesota and thence by North Dakota. The cases of *Bayliss* v. *People,* 46 Mich. 221 (9 N. W. 257), *State* v. *Brecht,* 41 Minn. 50 (42 N. W. 602), and *State* v. *Wesie,* 17 N. D. 567 (118 N. W. 20, 19 L. R. A. (N. S.) 786), are in point.    Upon the other hand, the rule in Iowa declares that, in a case of adultery where both offenders are married, the complaint must be made by the husband or wife of the offender proceeded against: *State* v. *Roth,* 17 Iowa, 336; *State* v. *Mahan,* 81 Iowa, 121 (46 N. W. 855); *Bush* v. *Workman,* 64 Iowa, 205 (19 N. W. 910); *State* v. *Oden,* 100 Iowa, 22 (69 N. W. 270).    This provision found in the Iowa statute, as interpreted by the early case of *State* v. *Roth,* 17 Iowa, 336, limits the right to commence a prosecution for adultery to the husband or wife of the guilty party; and the commencement of the prosecution by the husband or wife of one party against his or her offending spouse does not authorize a prosecution against both.    The Iowa statute provides that no "prosecu-

tion for adultery can be commenced, but on the complaint of the husband or wife.'' The court said:

"This question is not only *res integra,* but it is *sui generis,* and so far as we have been able to extend our investigations, it has no parallel in the common or statute law, and is, therefore, purely an original question, to be decided without the aid of precedent.

"Adultery, though in England cognizable criminally under the ecclesiastical law, was not indictable at the common law, and is not therefore punishable in this country, where we have no established religion, except it is made so by statute. * *

"Was this provision (providing that 'no prosecution for adultery can be commenced but on the complaint of the husband or wife') incorporated in the statute simply to protect the partner or family from the public scandal attending the prosecution for the offense, or was it also in view of the fact that the penalty could not be visited upon the guilty party of such marriage, without, at the same time, in almost an equal degree, visiting it upon the innocent partner? Or, did the legislature regard the offense as primarily against the family, as tending to impose on the marriage a spurious issue, and as incidental only in its consequences to the public, and therefore left it with the innocent partner to demand the enforcement of the penalty or not, at pleasure? * *

"What can be intended by the use of the definite article 'the,' preceding husband or wife, unless it refers to the husband or wife of the party against whom the prosecution is commenced. The object of the limitation of the statute, in our view, was to exempt the party from prosecution, unless the husband or wife of such party should commence the prosecution against him or her.''

This case has been cited and followed in many subsequent Iowa cases and has generally been followed by the Circuit Courts of Oregon. In the case of *Bush* v. *Workman,* 64 Iowa, 205 (19 N. W. 910), the

Supreme Court of that state, by opinion, held, with
reference to the statute providing that "no prosecu-
tion for adultery can be commenced but on the com-
plaint of the husband or wife," that—

"It cannot be doubted that the words 'husband or
wife' refer to and mean the spouse of the person
charged with the offense. The statute is express and
plain in its language, and its meaning cannot be mis-
understood. It forbids prosecutions for adultery, ex-
cept when commenced by the spouse of the person
prosecuted."

Such provisions restricting the prosecution of the
offense to the aggrieved husband or wife of the de-
fendant are said to be grounded in the regard which
the law has for the marriage relation and the right
of the husband and wife to condone the wrongs of
either toward the other: *State* v. *Corliss,* 85 Iowa,
18 (51 N. W. 1154); *State* v. *Andrews,* 95 Iowa, 451
(64 N. W. 404); *State* v. *Oden,* 100 Iowa, 22 (69
N. W. 270). The recent cases of *State* v. *Astin,* 106
Wash. 336 (180 Pac. 394, 4 A. L. R. 1335), and *State*
v. *La Bounty,* 64 Wash. 415 (116 Pac. 1073), seem
to support the Iowa rule. In the latter case Judge
DUNBAR, speaking for the Supreme Court of the
State of Washington, in discussing the reason for
providing that a prosecution of that case could be
commenced only upon the complaint of the husband
or wife, said:

It was "the * * intention of the legislature which
incorporated the provisions into the law" to regard
adultery "as a crime against the husband or wife
personally, rather than as a crime against society,
leaving the husband or wife * * to condone the
offense if he or she desired so to do, unem-
barrassed by the publicity incident to the prosecution
instituted by the officers of the state."

In *State* v. *Astin,* 106 Wash. 336 (180 Pac. 394, 4 A. L. R. 1335), the most recent case here cited, Judge MACKINTOSH held, regarding the statute limiting the commencement of the prosecution to the complaint of the injured spouse, that—

"The purpose of the act is, as stated in the case of *State* v. *La Bounty,* * * to put the commencement of the prosecution in the exclusive control of the injured spouse, in order that reconciliation might take place free from publicity and notoriety."

8. We will now search for the legislative intent, which is always controlling in the construction of a statute. It has been said that "a legislative act is to be interpreted according to the intent of the legislature apparent upon its face"; also, that "the intent of the lawmaker is the law"; and that the "primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used": Rule 17, Statutes and Statutory Construction, by Charles C. Moore, 1 Fed. Stat. Ann. (2 ed.), and authorities there cited.

The fact that the highest courts of the different states we have mentioned differ as to the meaning of this clause of the adultery statute tends to prove that doubt exists as to its import. In view of the conflict of the decisions of the courts, we will assume that the meaning of this clause is not plain, and call to our aid the history of the legislation, the legislative interpretation, and the practical construction given this provision of the adultery statute in Oregon. On June 5, 1843, the legislative committee of the provisional government of Oregon made a report to the people recommending that—

"The laws of Iowa territory shall be the law of this territory, in civil, military, and criminal cases; where

not otherwise provided for, and where no statute of Iowa territory applies, the principles of common law and equity shall govern."

This report was adopted by the people on July 5, 1843. The laws of Iowa thus adopted by the people were "the statute laws of the territory of Iowa, enacted at the first session of the legislative assembly of said territory, held at Burlington, A. D. 1838–39; published by authority, DuBuque, Bussel, and Reeves, Printers, 1839": Oregon Archives, pp. 30, 31, and 32. The Centennial History of Oregon, pp. 174, 182.

In the Iowa Code, Section 85 of an act defining crimes in the territory of Iowa became, by adoption, the first law in Oregon denouncing the crime of adultery.

On June 27, 1844, the legislature of the provisional government passed an act which provided, among other things, that—

"All the statute laws of Iowa Territory passed at the first session of the legislative assembly of said territory, and not of a local character, and not incompatible with the condition and circumstances of this country, shall be the law of this government, unless otherwise modified; and the common law of England and principles of equity, not modified by the statutes of Iowa or of this government, and not incompatible with its principles, shall constitute a part of the law of this land": Laws of Oregon of 1843–49, p. 100.

The fourteenth section of the act of Congress of August 14, 1848, c. 177, 9 Stat. 323, organizing the territory of Oregon, continued these laws of provisional government in force until they should be altered or repealed: General Laws of Oregon, 1843–72; Deady and Lane Code, p. 60. The legislative assembly of Oregon Territory, September 29, 1849, adopted the revised laws of Iowa of 1843. The Code

last adopted was known as the Revised Statutes of the territory of Iowa, revised and compiled by a joint committee of legislative session of 1842–43 and arranged by the Secretary of the Territory, published by authority at Iowa City, and printed by Hughes & Williams, 1843. Section 21 of an act defining crimes and punishments, in the Revised Code, defined the crime of adultery and, prescribing the punishment therefor, amended the previous adultery statute materially. Due to a decision of the Supreme Court of the territory, doubt was raised as to which of the Iowa Codes mentioned constituted the laws of Oregon. The three territorial judges disagreed.

"The result of these conflicting views of the judges was that in Judge Nelson's judicial district, composed of Clackamas, Marion, and Linn counties, and in Judge Strong's district, composed of Clatsop County and the counties North of the Columbia River, the Iowa Code of 1838, adopted by the Provisional Government, was held to be in force. Judge Pratt's district, composed of all the territory West of the Willamette River, included the counties of Washington, Yamhill, Polk, and Benton, and in this district the 'Chapman Code' of the Revised Code of Iowa Statutes of 1843 was recognized as the law in force. In the district of Nelson and Strong, the lawyers would cite the law from the 'Little Blue Book,' as the volume of Statutes of Iowa of 1838 was called. In Judge Pratt's district the same lawyers would quote from the 'Big Blue Book,' as the Iowa Code of 1843 was called." Oregon Historical Society, Volume 4, page 188. Article by Hon. James K. Kelly.

It was this dispute that gave rise to the appointment of the Code commission authorized and appointed by the legislative session of 1853, who prepared the Oregon Code of 1853, which commission consisted of James K. Kelly of Clackamas

County, Chairman, Reuben P. Boise of Polk County, and Daniel R. Bigelow of Thurston County. Judge Kelly, in the article referred to in the Oregon Historical Journal, states that—

"It was agreed among us that Mr. Boise should prepare the act relating to executors and administrators, and also proceedings in the probate courts.

"To Mr. Bigelow was assigned the duty of preparing the act relating to crimes and misdemeanors, and to regulate criminal proceedings.

"I undertook to prepare the Code of Civil Procedure in actions at law and suits in equity."

The commission gathered material for the Code of 1853 from different sources. That part of the Oregon statute relating to the manner of commencing and prosecuting actions at law was taken from the New York Code. It is commonly asserted that the adultery statute of the Code of 1853, wherein the clause relating to the commencement of the prosecution first appears in Oregon, was taken from the Iowa Code of 1851. We have no positive proof that this is true; but by a comparison of Chapter 11 of the Criminal Code of Oregon prepared by the commission of 1853, denouncing a list of offenses against "chastity, morality and decency," with a list of acts condemned as "offenses against chastity, morality and decency" by Chapter 145 of the Iowa Code of 1851, we believe that there is much reason for the claim.

The adultery statute as provided in the Code of 1853, remained unchanged until the adoption of the Criminal Code of Oregon annotated and compiled by M. P. Deady. This Code was prepared and reported to the legislative assembly that met September 12, 1864. It was passed as reported at the same session,

and took effect as declared in Section 731, May 1, 1865: Note, Deady Code, p. 441. This statute was divided into two sections by Judge DEADY, the phraseology changed, the jail penalty added, the minimum fine raised, and the words, "or the time when the same shall come to the knowledge of the husband or wife," added. But the clause under consideration was in no way altered. This statute appears in the Deady and Lane Code, and in the first Hill Code, unchanged. The legislature of 1891 re-enacted one section of this statute, and amended it by providing for the prosecution of a married man who commits the crime of adultery with an unmarried female under the age of 20 years, which act now appears as Section 2072, Or. L.

Prior to the legislative session of 1891, the clause providing that "a prosecution for the crime of adultery shall not be commenced except upon the complaint of the husband or wife" had received numerous interpretations by the Circuit Courts of this state. The legislature re-enacted said section, without change other than noted, after the courts had long construed this clause to mean that no prosecution for the crime of adultery should be commenced except upon the complaint of the husband or the wife of the defendant when both parties to the crime were married. This is an important fact in looking for legislative intent.

"A construction made by the body charged with the enforcement of a statute, which construction has long obtained in practical execution, and has been impliedly sanctioned by the re-enactment of the statute without alteration in the particulars construed, when not plainly erroneous, must be treated as read into the statute": *New York, N. H., etc. R. Co.* v. *Interstate Commerce Commission,* 200 U. S. 361 (50 L. Ed.

515, 26 Sup. Ct. Rep. 272, see, also, Rose's U. S. Notes); Endlich on Inter. Statutes, § 367; *State* v. *Schenk,* 238 Mo. 429 (142 S. W. 263).

9. It will be remembered that the Circuit Courts of Oregon have almost invariably followed the Iowa rule, notwithstanding the fact that this clause of the adultery statute of Oregon antedates the case of *State* v. *Roth,* 17 Iowa, 336, some 10 years. As illustrative of the rulings of the Circuit Courts of Oregon, we will take the case of *State* v. *Collins,* heard in the Circuit Court of the State of Oregon in and for Marion County, wherein the circuit judge observed that the court followed the Iowa rule because of the "good reasoning contained in the opinion of *State* v. *Roth,* 17 Iowa, 336," and that "in fact we had at one time adopted the Code of Iowa." The constructions placed upon this statute by the Circuit Courts of this state do not bind this court, but the rulings are persuasive, and where the construction has been almost uniform for a period of more than half a century, it should not be set aside without very grave reason therefor.

"It is a well-settled rule that the contemporaneous construction of a statute by those charged with its execution, especially when it has long prevailed, is entitled to great weight, and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous": *Biggs* v. *McBride,* 17 Or. 640 (21 Pac. 878, 5 L. R. A. 115); *Kelly* v. *Multnomah County,* 18 Or. 356 (22 Pac. 1110); Rule 56, Statutes and Statutory Construction, 1 Fed. Stats. Ann. (2 ed.), and numerous cases under note 56.

10. We hold the law of this state to be that when the crime of adultery has been committed between a married man and a married woman, as in the in-

stant case, the right to complain and institute a prosecution upon a charge of adultery against either of the guilty parties is the exclusive privilege of the unoffending wife or husband of the defendant proceeded against.

It is the order of this court that the judgment of the court below is reversed, and the case is remanded, with direction that the appellant be discharged from further prosecution of the pending indictment.

REVERSED WITH DIRECTIONS.

BENSON, J., not sitting.