Argued and submitted March 7, 1985, reassigned March 4, affirmed
September 16, 1986

STATE OF OREGON,
*Respondent on Review,*

*v.*

GRANT SMITH,
*Petitioner on Review.*

(DC M3-44; CA A29648; SC S31395)

725 P2d 894

Thomas J. Crabtree, Bend, argued the cause for petitioner

on review. With him on the petition was Crabtree & Rahmsdorff, Bend.

James E. Mountain, Jr., Solicitor General, Salem, argued the cause for respondent on review. With him on the response were Dave Frohnmayer, Attorney General, Thomas H. Denney, Assistant Attorney General, Stephen F. Peifer, Assistant Attorney General, and Ann F. Kelley, Assistant Attorney General, Salem.

John Daugirda, Deputy Public Defender, Salem, filed an *Amicus Curiae* brief on behalf of Oregon Public Defender.

John Henry Hingson III, Oregon City, filed an *Amicus Curiae* brief on behalf of Oregon Criminal Defense Lawyers Association.

CAMPBELL, J.

Jones, J., filed a concurring opinion.

Linde, J., filed a dissenting opinion joined by Lent, J.

## CAMPBELL, J.

The question is whether Article I, section 12, of the Oregon Constitution[1] requires that persons detained for questioning by law enforcement officers be given warnings similar to those required by *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), under the federal Fifth Amendment.[2] We hold that it does not.

Two deputy sheriffs responding to a report of a vehicle off the road observed defendant about 150 yards from the disabled vehicle. When defendant saw the deputies he began to run, but stumbled and fell. The deputies approached defendant and assisted him back to their patrol car. The deputies suspected that defendant had been drinking, but at that time did not connect him with the disabled vehicle or suspect him of any crime. Defendant denied owning the vehicle. He told the police that he and another person had been drinking behind a nearby warehouse.

The officers learned from their dispatcher that defendant owned the car. Defendant then admitted that he owned the car and that he had been driving it when it went off the road. He was then arrested, given *Miranda* warnings, and later made further incriminating statements.

At trial on the charge of driving while under the influence of intoxicants, defendant moved to suppress his statements to the officers, relying on both the federal and state constitutions. The motion to suppress was denied. The trial court found that defendant's initial responses were obtained during a field interrogation and that he was not "in custody" for the purposes of *Miranda v. Arizona* until he was arrested. The trial judge further found that defendant's incriminating statements were made voluntarily.

Defendant was convicted. He appealed, relying on

---

[1] Article I, section 12, of the Oregon Constitution provides:

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

[2] The Fifth Amendment to the federal constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides:

"No person * * * shall be compelled in any criminal case to be a witness against himself * * *."

both the Fifth Amendment and Article I, section 12, of the Oregon Constitution. The Court of Appeals affirmed the trial court. 70 Or App 675, 691 P2d 484 (1985). In his petition for review to this court defendant relied solely on Article I, section 12, saying that it requires a *Miranda*-type warning to be given earlier in point of time than does the federal Fifth Amendment under *Berkemer v. McCarty,* 468 US 420, 104 S Ct 3138, 82 L Ed 2d 317 (1984).[3]

## THE RIGHT TO REMAIN SILENT IN OREGON

The State of Oregon has recognized that its citizens have the right to remain silent in various circumstances by virtue of two statutory schemes, the adoption of common-law rules, and a constitutional provision. That right is spelled out in the following:

(1)   ORS 135.070(1) provides that in a preliminary hearing the magistrate shall inform the defendant that he is not required to make a statement.

(2)   ORS 136.425(1) provides that a confession or admission of a defendant "cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats."

(3)   *State v. Wintzingerode,* 9 Or 153, 163 (1881), held that the common-law rules governing the admissibility of confessions are in force in Oregon, including the rule that "confessions made by a prisoner while in custody, and induced by the influence of hope or fear, applied by a public officer having the prisoner in his charge" are not admissible in evidence.

(4)   Article I, section 12, of the Oregon Constitution provides in part: "No person shall * * * be compelled in any criminal prosecution to testify against himself."

---

[3] The United States Supreme Court decision in *Berkemer v. McCarty,* 468 US 420, 104 S Ct 3138, 82 L Ed 2d 317 (1984), was the basis for this court's withdrawal of its prior decision in *State v. Roberti,* 293 Or 59, 644 P2d 1104, *reh'g allowed, former opinion withdrawn* 293 Or 236, 646 P2d 1341 (1982), *vacated and remanded* 468 US 1205, 104 S Ct 3574, 82 L Ed 2d 873, *former opinions withdrawn* 298 Or 412, 693 P2d 27 (1984). In light of *Berkemer,* this court's opinion in *State v. White,* 297 Or 302, 685 P2d 983 (1984), also is of questionable value. Both *Roberti* and *White* were decided under the federal constitution only, and have no precedential value in the application of Article I, section 12.

One of the issues in this case is whether the Oregon Constitution requires warnings similar to those specified in *Miranda v. Arizona.* In *Miranda* the Court required that "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 US at 444. In our review of the Oregon law, in addition to the right to remain silent, it will be necessary for us to examine defendant's related right to an attorney and defendant's right to know that any statement he or she makes may be used in evidence.

(1) *The magistrate is required to inform the defendant at the preliminary hearing.*

ORS 135.070(1) provides:

"When the defendant against whom an information has been filed in a preliminary proceeding appears before a magistrate on a charge of having committed a crime punishable as a felony, before any further proceedings are had the magistrate shall read to the defendant the information and shall inform the defendant:

(1) Of the defendant's right to the aid of counsel, *that the defendant is not required to make a statement and that any statement made by the defendant may be used against the defendant.*" (Emphasis added.)[4]

The following statutes are part of the statutory scheme:

ORS 135.095:

"When the examination of the witnesses on the part of the state is closed, the magistrate shall inform the defendant that it is the right of the defendant to make a statement in relation to the charge against the defendant; that the statement is designed to enable the defendant, if the defendant sees fit, to

---

[4] ORS 133.610 was amended by Oregon Laws 1963, chapter 511. Part of the effect of the amendment was to add the underlined portion of what is now ORS 135.070(1). The original statute was enacted October 19, 1864. It was compiled in the Deady Code as Section 379 and provided:

"When the defendant is brought before a magistrate upon an arrest, either with or without warrant, on a charge of having committed a crime, the magistrate must immediately inform him of the charge against him, and of his right to the aid of counsel before any further proceedings are had."

answer the charge and explain the facts alleged against the defendant; that the defendant is at liberty to waive making a statement; and that the waiver of the defendant cannot be used against the defendant on the trial."

ORS 135.100(3)(a):

"The statement of the defendant shall be reduced to writing by the magistrate or under the direction of the magistrate and authenticated in the following form:

(a)   It shall set forth that the defendant was informed of the rights of the defendant, as provided in ORS 135.095, and that after being so informed the defendant made the statement."

ORS 135.115:

"If the defendant waives the right of the defendant to make a statement, the magistrate shall make a memorandum thereof in the proceedings; but the fact of the waiver cannot be used against the defendant on the trial."

ORS 136.435:

"Evidence obtained directly or indirectly as a result of failure of a magistrate to comply with ORS 135.070 shall not be admissible, over the objection of the defendant, in any court."[5]

To the best of our knowledge, this court has never interpreted or applied ORS 135.070(1) or 136.435 in a context that would be relevant to the issue in this case.

In *State v. Hatcher*, 29 Or 309, 44 P 584 (1896), *overruled on other grounds by State v. McLean*, 255 Or 464, 476, 468 P2d 521 (1970), the defendant was convicted of the crime of manslaughter. The defendant contended that the trial court committed error in admitting into evidence a written statement made by the defendant at the preliminary hearing. This court considered Hill's Code section 1594 (now ORS 135.095) and reversed the conviction:

"* * * The introductory statement by the magistrate that 'Defendant was informed of his right to make a statement, and proceeded as follows,' would seem to imply that he was not informed of his right to waive making a statement, and

---

[5] ORS 135.095 and 135.115 are substantially the same as Sections 387 and 388 of the Deady Code. ORS 136.435 was enacted as section 2 of chapter 511, Oregon Laws 1963, amending ORS 133.610.

that such waiver could not be used against him. The statute, (Hill's Code, § 1594,) provides that 'When the examination of the witnesses on the part of the state is closed, the magistrate must inform the defendant that it is his right to make a statement in relation to the charge against him; that the statement is designed to enable him, if he sees fit, to answer the charge, and explain the facts alleged against him; that he is at liberty to waive making a statement, and that his waiver cannot be used against him on the trial.' The defendant not having been notified of this last clause by the magistrate, may have understood, when informed of his right to make a statement, that it was incumbent on him to make one, and that in doing so he was obeying a legal mandate, and not making a voluntary statement. The right to waive making such a statement implies that if one be made it is voluntary, and, therefore, admissible in evidence, but it cannot be regarded as being voluntarily made unless it appears that the accused was informed by the magistrate of his right to waive it, for if he made the statement under the belief that it was required of him by the magistrate it is inadmissible against him: *State v. O'Brien* (Mont.), 43 Pac. 1091 [(1896)]. There is nothing in the record to show that the statement was voluntarily made by the defendant, and hence it could not be admitted in evidence over his objection." 29 Or at 311-12.

In *State v. Andrews,* 35 Or 388, 58 P 765 (1899), the defendant was convicted of exhibiting obscene pictures. This court reversed the conviction because the names of the witnesses examined before the grand jury were not endorsed on the indictment. This court by way of *dictum* said:

"In view of another trial, it becomes important to consider some of the alleged errors which may be avoided thereat. Evidence was introduced at the trial which tended to show that the pictures alleged to have been exhibited by the defendant were contained in a nickel-in-the-slot machine. The court, over defendant's objection and exception, permitted evidence to be offered of what he said at his preliminary examination before the justice of the peace, tending to show his ownership of said pictures, without it being shown that he was cautioned as to his legal rights, or that such statements were voluntary. The organic law of the state provides that no person shall be compelled in any criminal prosecution to testify against himself (Const. Or. Art I, § 12); and our court, giving to this clause the liberal construction to which it is entitled, has held that, before the confessions of a defendant can be received in evidence in a criminal action, it must

appear that they were voluntarily made: *State v. Moran,* 15 Or. 262 (14 Pac. 419) [(1887)]. The transcript shows that the defendant * * * was present before the justice of the peace for examination on a criminal charge; and when the complaint was read, in the absence of his attorney, made statements which might tend to incriminate him. * * * The defendant could have made a written statement in that court in explanation of the facts alleged against him, but before he could be bound thereby it must have appeared that he was informed of his rights by the magistrate: Hill's Ann. Laws, §§ 1594, 1598 [now ORS 135.095 and 135.100(3)(a)]; *State v. Hatcher,* 29 Or. 309 (44 Pac. 584) [(1896)]. The justice's court having no authority to try the defendant for the crime charged, his statements cannot be deemed a plea of guilty; nor are they in the nature of voluntary declarations against interest, made to an officer or person concerning the offense. But such statements were equivalent to testimony extorted from him when a prisoner at his preliminary examination. His situation rendered what he might then say concerning his guilt in the nature of a confession, and, there being no evidence that he was advised of his rights, or cautioned that any statement he should make might be urged against him in his subsequent trial, such confession was not voluntarily made, and the court erred in admitting it in evidence: [citations omitted]." 35 Or at 391-92.

In *State v. Stevenson,* 98 Or 285, 193 P 1030 (1920), the alleged confession which was received in evidence was made to the district attorney in his office and was not a part of the preliminary examination. This court held that if the confession was admissible in evidence, it was not because of the provisions of Section 1781, Lord's Oregon Laws (ORS 135.095), but because of the fact that it was an extrajudicial confession. " 'Judicial confessions' are those made before a magistrate or in court in the due course of legal proceedings. 'Extrajudicial confessions' are those made by the party elsewhere than before a magistrate or in open court [citation omitted]." 98 Or at 291.

*State v. Hatcher, supra, State v. Andrews, supra,* and *State v. Stevenson, supra,* can only be read to say that at a preliminary hearing the magistrate is required to give the defendant the statutory warnings. Those cases cannot be stretched or bootstrapped into holding that a police officer or other person is required to give an individual in custody similar warnings in an extra-judicial situation. It is true that

*Andrews* cites Article I, section 12, of the Oregon Constitution for the proposition that before a confession may be received in evidence it must be made voluntarily, but the case does not imply that the magistrate's statutory warnings must be given to make the confession voluntary in a non-judicial setting.

It is interesting to note that ORS 135.070(1) was enacted in its present form in 1963 and contains the three basic warnings which were promulgated by *Miranda v. Arizona* three years later in 1966.

(2) *Statutory provision that confession is not admissible when induced by fear.*

ORS 136.425(1) provides in relevant part:

"A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats * * *."

The original predecessor statute was enacted October 11, 1864. It was compiled in the Deady Code as Section 214 and provided:

"A confession of a defendant, whether in the course of judicial proceedings, or to a private person, cannot be given in evidence against him, when made under the influence of fear, produced by threats * * *." General Laws of Oregon, ch 23, § 214, p 478 (Deady 1845-1864).

The statute was expanded by Oregon Laws 1957, chapter 567, section 1, to include the "confession or *admission* of a defendant." (Emphasis added.)[6]

---

[6] *State v. Weston,* 102 Or 102, 114, 201 P 1083 (1921), explained the difference between a confession and an admission, citing *State v. Heidenreich,* 29 Or 381, 45 P 755 (1896):

"The words 'confession' and 'admission' are not synonymous, the latter relating to the acknowledgment of facts, and the former to the acknowledgment of guilt."

*State v. Howard,* 102 Or 431, 451, 203 P 311 (1921), noted the distinction in the pre-1957 procedure:

"*Prima facie,* an admission against interest is always admissible both in civil and criminal cases. * * *

"* * * * *

"On the other hand, a confession which is actually or practically an acknowledgment of guilt is *prima facie* involuntary and imposes upon the state the burden of showing that it was not induced by threats or promises of favor. * * *"

It could be argued that ORS 136.425 is incomplete in that it is only concerned with confessions or admissions "made under the influence of fear produced by threats" and does not address confessions or admissions made because of promises of reward or immunity.

We know of no case that interprets or applies ORS 136.425 independently of the common-law rules on confessions and admissions.

(3)  *Common-law rules governing the admissibility of confessions.*

In *State v. Wintzingerode*, 9 Or 153 (1881), this court was called upon to determine if the predecessor statute to ORS 136.425 (at that time identical to Section 214 of the Deady Code quoted above) was exclusive or if the common-law rules as to confessions still applied. The defendant was arrested for murder and while in custody Officer Mead said to him: "It would be better for you, Harry, to tell the whole thing." The defendant then made his first confession. A day or two later Officer Cameron, who was in charge of the county jail, said to the defendant: "This is a pretty bad scrape you have got into. How did it happen?" 9 Or at 162-63. The defendant then made a second detailed confession. The trial court excluded the first confession but not the second.

On appeal the defendant contended that both confessions should have been excluded. The state contended that under the statute (now ORS 136.425) the first confession to Officer Mead was admissible and therefore the second confession to Officer Cameron also should be admissible. The state insisted that the statute altered the common-law rule and that "only those confessions can now be excluded which have been 'made under the influence of fear produced by threats.' " 9 Or at 160. This court held:

"* * * The statute purports only to extend to one class of confessions, viz.: Those induced by threats. It does not even mention the other class, to wit: Those induced by promises or intimations of favor from persons in authority and having the party confessing in their custody.

"These two classes are distinct and rest on different foundations; and we are not able to perceive how one class can be effectual by implication merely, from legislation which only affirms the principles of the common law as to the other class.

"* * * * *

"Upon the whole we are satisfied that our statute is wholly affirmative and that the common law rules, governing the admissibility of confessions are still in force in this state.

"* * * * *

"There seems to be no conflict among the numerous authorities as to the rule, that confessions made by a prisoner while in custody, and induced by the influence of hope or fear, applied by a public officer having the prisoner in his charge, are inadmissible in evidence against him." 9 Or at 162-63.[7]

The conviction was reversed because there was no showing that the motives for the original confession to Officer Mead had ceased to operate when the second confession to Officer Cameron was given.

In the 100-plus years since it was decided, *State v. Wintzingerode, supra,* has become the case most cited in Oregon on the law of confessions. A line of cases has developed in which the common-law rules in conjunction with ORS 136.425 have detailed and spelled out the admissibility of confessions.

In *State v. Spanos,* 66 Or 118, 120, 134 P 6 (1913), this court said:

"It is a fundamental rule of criminal law that a confession cannot be used against a defendant unless the prosecution can show its free and voluntary character, and that neither duress nor intimidation, hope nor inducement caused defendant to furnish such evidence against himself: *State v. Wintzingerode,* 9 Or. 153; [citations omitted]."

In 1947 this court in *State v. Henderson,* 182 Or 147, 173, 184 P2d 392 (1947), correctly summarized our previous caselaw:

"An extra-judicial confession is admissible in this State even though the officer to whom it was made did not inform the accused of his right to consult counsel, of his right to remain silent and of the fact that his declarations would be used against him: *State v. Layton,* [174 Or. 217, 148 P. (2d)

---

[7] This court did not detail any other common-law rules in regard to confessions, except to state that the confession must be voluntary and that no precise form of words for the inducement to confess is necessary. The court referred extensively to Greenleaf on Evidence. It appears that the court was referring to the 13th Edition (1876).

522 (1944)]; *State v. Moore,* 124 Or. 61, 262 P. 859 [(1928)]; and *State v. Wilder,* 98 Or. 130, 193 P. 444 [(1920)]. See also *State v. Butchek,* 121 Or. 141, 253 P. 367, 254 P. 805 [(1927)]; and, generally, see 22 C.J.S., Criminal Law, § 822, p. 1441, and 20 Am. Jur., Evidence, § 505, p. 435."

Another of the fundamental rules is set out in *State v. Ely,* 237 Or 329, 332, 390 P2d 348 (1964):

"In this state, confessions and admissions are initially deemed to be involuntary. Before either can be received in evidence, the state has the burden of showing that it was voluntarily made, without the inducement of either fear or hope. ORS 136.540 [now ORS 136.425]; [citations omitted]."

In *State v. Nunn,* 212 Or 546, 553, 321 P2d 356 (1958), Justice Kester writing for the court summarized some of the rules relevant to the admission of confessions:

"A confession is not inadmissible merely because the defendant is in custody (*State v. Folkes,* 174 Or 568, 580, 150 P2d 17, cert. den. 323 US 779 [(1944)]), nor uninformed of his rights (*State v. Henderson,* supra, 182 Or at 173, 184 P2d 392), nor unrepresented by counsel (*State v. Layton,* 174 Or 217, 231, 148 P2d 522, cert. den. 323 US 728 [(1944)]), nor because he was not taken promptly before a magistrate (*State v. Leland,* 190 Or 598, 627, 227 P2d 785 [(1951)], affirmed 343 US 790, 96 L ed 1302, 72 S Ct 1002, reh. den. 344 US 848 [(1952)]), nor because the confession is made in answer to questions which are accusatory or which assume defendant's guilt (*State v. Blodgett,* 50 Or 329, 335, 92 P 820 [(1907)]; *State v. Howard,* [102 Or 431, 425, 203 P 311 (1921)]; *State v. Henderson,* supra, 182 Or at 173). * * *"[8]

*Nunn* continued:

"The test, so far as one can be formulated, is: 'Was the inducement held out to the accused such as that there is any fair risk of a false confession, for the object of the rule is not to exclude a confession of the truth but to avoid the possibility of a confession of guilt from one who is in fact innocent.' *State v.*

---

[8] *See* Note, *Criminal Law—Evidence—Confessions Induced by Promises and Threats,* 26 Or L Rev 62, 62 (1946), a comprehensive student casenote based on *State v. Linn,* 179 Or 499, 173 P2d 305 (1946).

Since *State v. Leland,* 190 Or 598, 227 P2d 785 (1951), *aff'd* 343 US 790, 72 S Ct 1002, 96 L Ed 1302 (1952), this court in *Dorsciak v. Gladden,* 246 Or 233, 239, 425 P2d 177 (1967), has held that a delay in arraignment is an important factor in determining if a confession was given voluntarily.

*Green,* [128 Or 49, 62, 273 P 381 (1929)]; *State v. Folkes,* supra, 174 Or at 580; *State v. Linn,* [179 Or 499, 507, 173 P2d 305 (1946)]." 212 Or at 553.

The above cases consistently demonstrate that under a combination of the common-law rules and ORS 136.425 that: (1) there is a distinction between judicial and extra-judicial confessions; (2) an out-of-court confession is not inadmissible because the defendant has not been advised of the right to counsel, the right to remain silent and of the fact that any statement may be used against the defendant; (3) the confession is initially deemed to be involuntary and the burden is upon the state to prove that it was voluntary; (4) the ultimate test is whether the confession was free and voluntary; (5) the key to the "free and voluntary" character of the confession is the inducement made to the defendant — was there any promise or threat made to the defendant which would elicit a false confession; and (6) since 1957 "admissions" have been treated the same as "confessions."

(4) *Article I, section 12, of the Oregon Constitution.*

The relevant portion of Article I, section 12, of the Oregon Constitution is:

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

Our cases have not always been consistent when considering this provision of the Oregon Constitution.

In *State v. Andrews, supra,* this court said:

"* * * The organic law of the state provides that no person shall be compelled in any criminal prosecution to testify against himself (Const. Or. Art. I, § 12); and our court, giving to this clause the liberal construction to which it is entitled, has held that, before the confessions of a defendant can be received in evidence in a criminal action, it must appear that they were voluntarily made: *State v. Moran,* 15 Or. 262 (14 Pac. 419) [(1887)]. * * *" 35 Or at 391.

In *State v. Neely,* 239 Or 487, 493-94, 395 P2d 557, 398 P2d 482 (1965), this court said:

"The Oregon decisions excluding involuntary confessions have based the exclusion upon common-law rules of evidence, codified into an Oregon statute. ORS 136.540. *State v. Wintzingerode,* 9 Or 153, 160-165 (1881). We have never held

that the Oregon constitutional prohibition against self-incrimination (Art I, § 12) was the basis of this exclusionary rule and we need not determine that issue at this time. *Malloy v. Hogan,* [378 US 1, 84 S Ct 1489, 12 L Ed 2d 653 (1964)], and *Escobedo* [*v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964),] make the right to remain silent during a police interrogation a Fourteenth Amendment right derived from the Fifth Amendment of the Federal Constitution."

In *State v. Classen,* 285 Or 221, 226, 590 P2d 1198 (1979), this court made the following observation:

"Evidence law has long provided for excluding certain evidence as a class when its questionable reliability vitiates the value of its possible truthfulness in the particular case, apart from any question of constitutional law. One familiar example is the exclusion of coerced confessions; others are the exclusion of evidence obtained by polygraph tests, hypnosis, or 'truth drugs.' *See State v. Wintzingerode,* 9 Or 153 (1881) (confessions obtained by promises or by threats); [citations omitted]."

In *State v. Mendacino,* 288 Or 231, 235-36, 603 P2d 1376 (1979), this court said:

"In Oregon, a confession is initially deemed involuntary. *State v. Ely,* 237 Or 329, 332, 390 P2d 348 (1964). Before a confession can be received in evidence, the state must show that it was voluntarily given, that is, made without inducement through fear or promises, direct or implied. *Cf.,* ORS 136.425(1). This has been the rule in Oregon for almost a century. *See State v. Wintzingerode,* 9 Or 153, 160-161 (1881). *Cf., Bram v. United States,* 168 US 532, 542-543, 18 S Ct 183, 42 L Ed 568 (1897). * * * The *Oregon Constitution* embodies these principles by guaranteeing that no person shall be compelled in any criminal prosecution to testify against himself. *Or Const. Art I, § 12.* Cf., US Const., Amend. V." (Emphasis added.)[9]

*State v. Mendacino, supra,* can be interpreted as

---

[9] *State v. Mendacino,* 288 Or 231, 239 n 6, 603 P2d 1376 (1979), also states:

"* * * We point out * * * that the privilege against self-incrimination under the Oregon and United States Constitutions guarantees that testimony which is procured by any threat *or promise,* direct or implied, will not be used against an accused. *Cf., State v. Ely,* 237 Or 329, 334, 390 P2d 348 (1964); *State v. Wintzingerode,* 9 Or 153, 160-161 (1881). *See Bram v. United States,* 168 US 532, 542-543, 18 S Ct 183, 42 L Ed 568 (1897)." (Emphasis in original.)

leaning away from the statement about the Oregon Constitution in *State v. Neely, supra,* and approving the above-quoted language from *State v. Andrews, supra.* The quoted portions of *Andrews* and *Neely* are both *dicta.* In *Mendacino* the defendant petitioned this court for review and did not quote or rely upon the Oregon Constitution. Even so, it appears that this court relied in part on Article I, section 12, to reverse the defendant's conviction and remand for a new trial.

This brings us to *State v. Mains,* 295 Or 640, 669 P2d 1112 (1983), and *State v. Sparklin,* 296 Or 85, 672 P2d 1182 (1983), from which it could be inferred that this court has already adopted an Oregon *Miranda* rule. In fact, the Court of Appeals has so inferred in *State v. Kell,* 77 Or App 199, 712 P2d 827 (1986), and *State v. Rowe,* 79 Or App 801, 720 P2d 765 (1986).

In *State v. Mains, supra,* one of the issues was whether the defendant was entitled to *Miranda*-type warnings before he was examined by a state psychiatrist. We noted that the details of the *Miranda* warnings were regarded as a judicial means to effectuate the federal Fifth Amendment's guarantee against self-incrimination. We went on to elaborate:

> "The Oregon Constitution similarly guarantees the right not to be compelled to testify against oneself in a criminal prosecution. Or Const, Art I, § 12. Like the United States Supreme Court, this court is called upon from time to time to specify the procedure by which a guarantee is to be effectuated. Such specifications are not the same as interpretations of the guarantee itself, that is to say, they may not always and in all settings be the only means toward its effectuation but may be adapted or replaced from time to time by decisions of this court or by legislation in the light of experience or changing circumstances. In the absence of legislation, we believe that the following are the relevant information and warnings required in the setting of a psychiatric examination of a defendant conducted on behalf of the state to guarantee the right not to be compelled to testify against oneself in a criminal prosecution under Article I, Section 12, of the Oregon Constitution." 295 Or at 645.

In *State v. Sparklin, supra,* the defendant was arrested in Lane County on a charge of forgery. The next morning he was arraigned and provided with an attorney. Later the same evening, without notice to the defendant's

attorney and without providing the defendant an opportunity to consult with his attorney, two Portland detectives interrogated the defendant about the unrelated robbery and murder of a man in Portland named Davidson. The Portland detectives gave the defendant the *Miranda* warnings and he signed a waiver. The defendant confessed to his participation in the Davidson murder. The defendant was tried and convicted. He sought to suppress the confession on the grounds that he had been compelled to testify against himself because his attorney was not present when he made the confession. The defendant contended that the *Miranda* warnings given him were not adequate to protect his Article I, section 12, rights under the Oregon Constitution. He urged this court to adopt more detailed warnings than those required by *Miranda v. Arizona.*

This court, in considering the defendant's contentions, referred to and quoted a portion of the above quote from *State v. Mains, supra.* It is no surprise that the opinion in *State v. Sparklin, supra,* was written on the assumption that *Mains* had adopted Oregon *Miranda* warnings.[10] We declined to give the alternative warnings proposed by the defendant on practical grounds. We commented: "At least as long as the text of the federal *Miranda* warnings remains the law, we think that the convenience of a single text exceeds any gain from improving that text." *Sparklin,* 296 Or at 89. In the case at bar, defendant is not asking that the text of the *Miranda* warnings be changed. He is requesting that the *Miranda* warnings be given at a time earlier than required by the federal caselaw.

In *State v. Sparklin, supra,* we held that the defendant did not invoke his Article I, section 12, right to be silent when he requested an attorney at his arraignment for forgery and that the state could seek a waiver from the defendant without notice to the attorney on a factually unrelated matter.

■■    We think that a fair reading of the above cases commencing with *State v. Andrews, supra,* through *State v.*

---

[10] In discussing the defendant's Article I, section 12, claims in *State v. Sparklin,* 296 Or 85, 89, 672 P2d 1182 (1983), this court said that "we require the police to inform a detained person that he may terminate questioning at any time and that he may have an attorney to advise him before he speaks." This statement could be considered as an Oregon adoption of a federal *Miranda* right. However, the statement is not necessary to the decision in the case and is *dictum.*

*Sparklin, supra,* demonstrates that Article I, section 12, of the Oregon Constitution includes and guarantees to a defendant the common-law rule that before a confession or admission can be received in evidence the state must prove that it was voluntarily made without inducement from fear or promises. To hold otherwise would mean that if an involuntary confession was received in evidence the defendant would be forced to testify against himself or herself. Article I, section 12, includes both the common-law rule requiring confessions to be voluntary and the common-law privilege granting every person the right to refuse to testify against himself or herself.

■ Presently included in the common-law rule on voluntary confessions is the sub-rule that an extra-judicial confession is admissible even though the officer to whom it is made did not inform the accused of his right to consult counsel, of his right to remain silent and of the fact that his declarations would be used against him. *State v. Henderson, supra.* The tail goes with the hide, and the *Henderson* rule is a part of this court's interpretation and application of the right to remain silent guaranteed by Article I, section 12. Nowhere in Article I, section 12, is there any mention of any required warnings. It does not say that the defendant shall be informed of the right to an attorney, the right to remain silent, and of the fact that any statement may be used against the defendant.

In 1983, prior to the publication of the decisions in *State v. Mains, supra,* and *State v. Sparklin, supra,* the law of this state did not require Oregon *Miranda* warnings. *Mains* and *Sparklin* merely assumed without deciding that the Oregon Constitution required warnings similar to those required in *Miranda v. Arizona.* Our prior caselaw, spanning more than a century, concerning the requirement of voluntary confessions and admissions was not considered or discussed.

## CONCLUSION

If this court had a strong reason for doing so it could overrule the *Henderson* line of cases and require *Miranda*-type warnings to help ensure the guarantees of Article I, section 12. That is what the United States Supreme Court did in *Miranda v. Arizona.* The Fifth Amendment is similar to Article I, section 12. (See footnotes 1 and 2.) This court previously has said that the difference in the language of the two constitutional provisions is not important. *State v. Cram,* 176 Or 577,

580, 160 P2d 283 (1945).

There is no question that the Oregon Constitution does not require the giving of *Miranda*-type warnings. Nor does any state statute require the warnings, except at the preliminary hearing procedure before a magistrate. ORS 135.070 *et seq.* What is at issue is the appropriate procedure "by which a guarantee [here, the right not to be compelled] is to be effectuated." *State v. Mains, supra,* 295 Or at 645.

In *Miranda v. Arizona* the United States Supreme Court elevated the required warnings to constitutional status through the application of the Fourteenth Amendment due process provision to the Fifth Amendment guarantee against compulsion. The warnings then were given constitutional status, the violation of which automatically resulted in suppression of the confession regardless of the underlying question of compulsion. Since the adoption of that court-made guarantee, the United States Supreme Court has seen fit to fashion "exceptions" to the requirement to ease the obviously inelastic proscription of the requirement. *See, e.g., New York v. Quarles,* 467 US 649, 104 S Ct 2626, 81 L Ed 2d 550 (1984); *Oregon v. Elstad,* 470 US 298, 105 S Ct 1285, 84 L Ed 2d 222 (1985).

It has been said that one reason for the *Miranda v. Arizona* decision was to negate the necessity for an *ad hoc* determination of voluntariness. History has shown the folly of this theory. First, a defendant remains free to contest the voluntariness of his confession even in cases where the warnings were given. Secondly, the horde of cases on this point suggests that the *ad hoc* inquiry of voluntariness has been replaced with the *ad hoc* (or, at least, the ever-shifting) determination of *when* the warnings must be given. *See, e.g., Berkemer v. McCarty,* 468 US 420, 104 S Ct 3138, 82 L Ed 2d 317 (1984). The federal shift has been to the judicially created battlefield of "custody," with its subjective/objective components and the search for the ever-elusive "free-to-leave" standard. Raising the warning incantation to constitutional status has not seemed to lessen the litigation upon appeal. A WESTLAW search of reported decisions discloses over 3,300 federal court and over 10,000 state appellate court decisions, including 269 appellate court decisions from Oregon that have wrestled with *Miranda v. Arizona.*

From the advantage of 18 years of hindsight, the United States Supreme Court in *Berkemer v. McCarty, supra,* gave the following reasons for the *Miranda* warnings:

"* * * The purposes of the safeguards prescribed by *Miranda* are to *ensure* that the police do not coerce or trick captive suspects into confessing, to relieve the ' "inherently compelling pressures" ' generated by the custodial setting itself, ' "which work to undermine the individual's will to resist," ' and as much as possible to free courts from the task of scrutinizing individual cases to try to determine, after the fact, whether particular confessions were voluntary. * * *" 468 US at 433 (footnotes omitted; emphasis in original).

*Miranda v. Arizona* was more specific about one of the reasons for the warnings:

"* * * The use of physical brutality and violence is not, unfortunately, relegated to the past or to any part of the country. Only recently in Kings County, New York, the police brutally beat, kicked and placed lighted cigarette butts on the back of a potential witness under interrogation for the purpose of securing a statement incriminating a third party. *People v. Portelli,* 15 N.Y. 2d 235, 205 N.E. 2d 857, 257 N.Y.S. 2d 931 (1965)." 384 US at 446 (footnote omitted).

It is not the purpose of this opinion to argue with *Miranda v. Arizona,* but it made a mistake including Oregon within the "part of the country" where physical brutality and violence by the police exist. We have cases that show police misconduct. In *State v. Mathiason,* 275 Or 1, 549 P2d 673 (1976), the police falsely told the defendant that his fingerprints had been found at the scene of a burglary and within five minutes he confessed.[11] In *State v. Haynes,* 288 Or 59, 602 P2d 272 (1979), *cert den* 446 US 945 (1980), the police removed the defendant from jail so that an attorney the defendant's wife had retained would be unable to see the defendant. In *State v. Wolfe,* 295 Or 567, 669 P2d 320 (1983), a police officer, armed with an arrest warrant, deliberately and purposefully tried to elicit incriminating answers from the defendant before arresting the defendant or giving him his *Miranda* warnings. In *State v. Green,* 128 Or 49, 273 P 381

---

[11] This court held that the defendant's confession resulted from custodial interrogation and reversed the conviction. The United States Supreme Court granted *certiorari* and in *Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977), held that the defendant was not in custody and reversed and remanded.

(1929), a detective was placed in a jail cell with the defendant and tricked the defendant into making a confession.

No one has demonstrated to us how an Oregon *Miranda* rule would help eliminate police misconduct of the type set forth in the above examples. We do not understand how an Oregon rule identical to the federal rule would increase the chances to "relieve inherently compelling pressures generated by custodial settings which work to undermine the individual's will to resist." If we adopted a different Oregon *Miranda* rule or placed a different interpretation upon the present federal rule, then we have created confusion. We doubt that the "task of scutinizing individual cases to try to determine, whether particular confessions were voluntary" would have created a greater case load for the courts than the flood of cases in the last 20 years that have tried to determine the correct application of the federal *Miranda* warnings.

Oregon is in this situation: We have the federal *Miranda* warnings. By virtue of the Fifth Amendment and the Fourteenth Amendment we have no choice. We are not arguing about that. *Miranda v. Arizona* is now 20 years old. A whole generation of police, lawyers, and judges has grown up with the federal *Miranda* warnings. We will not speculate what Oregon would be like without them. We also have a body of law on confessions. The bottom line in Oregon for over 100 years has been that before a confession or admission can be received in evidence, the state must prove that it was free and voluntary. For the most part during the last 20 years our law on confessions has been in a standby position gathering rust. Most of the questionable confessions and admissions have been eliminated by the federal *Miranda* rule. However, it is possible to have an involuntary confession or admission even though the *Miranda* warnings have been properly given. We think that it is important to keep the Oregon law on confessions and admissions intact.[12]

---

[12] The federal *Miranda* warnings have become a part of our culture. They have been widely discussed and quoted in all areas of our society. In some places the name of "Ernesto Miranda" is better known than the names of "Babe Ruth" and "Calvin Coolidge."

In the event the United States Supreme Court retracts or retreats from the present *Miranda* warnings, Oregon might consider warnings similar to those set out in the English "Judges' Rules." Those rules were described by Justice Harlan in his

To adopt an Oregon *Miranda* rule identical to the federal rule without any commitment to future interpretation would be unwise. We would be in the same position as we are today, except that the ranch would have been sold with no down payment. To adopt an Oregon *Miranda* rule identical to the federal rule and tie it to future interpretation by the federal caselaw would be foolish. We do not know what may be waiting in the alley. To adopt an Oregon *Miranda* rule identical to the federal rule and place our own future interpretation on it would only further confuse an already confused area of the law. To adopt an Oregon *Miranda* rule different from the federal rule is not warranted.

■■■ Article I, section 12, of the Oregon Constitution prohibits compulsion, which we interpret to require voluntariness. Past judicial decisions of this court have used the evidentiary device of "deeming" any confession to be involuntary and require the state to bear the burden of overcoming that judicial predisposition. In cases where the state has given *Miranda*-type warnings and avoided any form of compulsion, the state has met its burden. Where the *Miranda*-type warnings were not given, the burden fully remains on the state to establish that the confession was voluntary.

We know of no strong and compelling reason to overturn a long-standing precedent of this court in order to adopt a rule which we consider to be unnecessary and confusing under the present circumstances.

The Court of Appeals is affirmed.

**JONES, J.,** concurring.

I write separately only to point out that in *State v. Mains,* 295 Or 640, 669 P2d 1112 (1983), this court, in discussing the necessity for warnings, was dealing with a case

---

dissent in *Miranda v. Arizona,* 384 US at 522:

> "* * * In that country, a caution as to silence but not counsel has long been mandated by the 'Judges' Rules,' which also place other somewhat imprecise limits on police cross-examination of suspects. However, in the court's discretion confessions can be and apparently quite frequently are admitted in evidence despite disregard of the Judges' Rules, so long as they are found voluntary under the common-law test. * * *"

Warnings similar to the English "Judges' Rules" would be consistent with Oregon's *State v. Henderson,* 182 Or 147, 184 P2d 392 (1947), line of cases.

in which the defendant had been arraigned, had been appointed counsel, was in full custody and was ordered to respond to questions by a state-appointed psychiatrist. Under those circumstances, and in the absence of legislation, we held that in order to effectuate the guarantee of Article I, section 12, of the Oregon Constitution, a defendant may not be compelled to testify against himself in a criminal prosecution and *Miranda*-type warnings should be given to the defendant by the psychiatrist.

In *State v. Sparklin,* 296 Or 85, 672 P2d 1182 (1983), again the defendant had been arraigned, had requested an attorney, was in full custody, had been given warnings as set forth in the *Miranda* case and had signed a waiver of his rights. The defendant in that case argued that the federal *Miranda* warnings were inadequate to protect his Article I, section 12, rights. We held that they were adequate.

Both *Mains* and *Sparklin* involved full custody interrogations—the type that most concerned Chief Justice Warren when he wrote the original *Miranda* opinion some 20 years ago. The present case involves statements that were made before any formal arrest, before any physical custody, before arraignment and before appointment of counsel. The specific holdings of *Mains* and *Sparklin* remain viable and are not affected by the plurality opinion in this case.

**LINDE, J.,** dissenting.

Throughout its history, Oregon's Bill of Rights has guaranteed that no one may be compelled in any criminal prosecution to testify against himself. Or Const, Art I, § 12. Throughout practically all of that history, Oregon statutes have secured this guarantee in a preliminary hearing by requiring that the magistrate inform a defendant of his rights to remain silent and to counsel, so that a defendant would not from ignorance of those rights or from the stress of his situation feel compelled to testify against himself. ORS 135.070(1),[1] General Laws of Oregon § 379 (Deady & Lane

---

[1] ORS 135.070 provides:

"When the defendant against whom an information has been filed in a preliminary proceeding appears before a magistrate on a charge of having committed a crime punishable as a felony, before any further proceedings are had the magistrate shall read to the defendant the information and shall inform the

1843-1864). Failure to give this information requires the exclusion of any evidence obtained thereby. ORS 136.435.[2]

The plurality opinion begins by stating the question to be whether the Oregon Constitution itself requires law enforcement officers to give prescribed warnings before interrogating a detained person. That loads the question, because the Constitution obviously does not mention warnings. But the Constitution forbids the state to prosecute upon "compelled" statements of the defendant. The question is how this guarantee is to be made effective. Like the legislature that adopted the Deady Code provision in 1864 and reenacted it in 1981, I believe that one obvious way to reduce the likelihood of "compelled" admissions or confessions is to tell suspects that they need not answer questions, that their answers may be used against them, and that they may consult counsel. Like the United States Supreme Court in applying the Fifth Amendment, I further believe that these warnings that Oregon long has required in a magistrate's hearing are equally necessary and by analogy extend to interrogation by law enforcement officers before a detained person is brought before a magistrate.

I.

Only three years ago this court held warnings to be required in order to give effect to Article I, section 12, in *State v. Mains*, 295 Or 640, 645, 669 P2d 1112 (1983). There, we wrote, as the present plurality opinion notes (301 Or at 695):

"The Oregon Constitution similarly guarantees the right not to be compelled to testify against oneself in a criminal prosecution. Or Const, Art I, § 12. Like the United States Supreme Court, this court is called upon from time to time to specify the procedure by which a guarantee is to be effectuated. Such specifications are not the same as interpretations of the guarantee itself, that is to say, they may not always and

---

defendant:

"(1) Of the defendant's right to the aid of counsel, that the defendant is not required to make a statement and that any statement made by the defendant may be used against the defendant."

[2]ORS 136.435 provides:

"Evidence obtained directly or indirectly as a result of failure of a magistrate to comply with ORS 135.070 shall not be admissible, over the objection of the defendant, in any court."

in all settings be the only means toward its effectuation but may be adapted or replaced from time to time by decisions of this court or by legislation in the light of experience or changing circumstances. In the absence of legislation, we believe that the following are the relevant information and warnings required in the setting of a psychiatric examination of a defendant conducted on behalf of the state to guarantee the right not to be compelled to testify against oneself in a criminal prosecution under Article I, Section 12, of the Oregon Constitution."

All but one member of the court joined in the *Mains* opinion; there was no dissent.[3] Thereafter, the quoted paragraph was repeated and applied to police interrogation in *State v. Sparklin,* 296 Or 85, 88, 672 P2d 1182 (1983), in which the court went on to hold that the familiar federal *Miranda* formulation of the warnings also satisfied Oregon requirements. Again, there was no dissent.

Today, three members of the court would disown what the court wrote in *Mains* and *Sparklin.* The other three members of the court would stand by the principle there stated, although, as Justice Jones's concurring opinion shows, we disagree on its application to the facts in this case.

Judge Campbell's opinion for three judges, all of whom joined in *Sparklin,* attempts to dismiss *Mains* and *Sparklin* as "assuming" to require warnings to carry out Article I, section 12. That will not hold water. Presumably the author of *Mains* saw a reason for including the careful statement of this court's duty "to specify the procedure by which [Article I, section 12] is to be effectuated." Presumably the court read and agreed with that statement and with its further elaboration in *State v. Sparklin.* The judges joining in the plurality opinion can hardly say that they erroneously "assumed" something about the proper application of the Oregon Constitution, as if that depended on someone other than themselves. When this court assumes a disputed proposition for purposes of argument only, it knows how to say so. Nor can *Sparklin's* reliance on Article I, section 12, be dismissed as *obiter dicta,* when the court went on to deal with and

[3] Peterson, C. J., dissociated himself from a statement about the presence of counsel at a psychiatric examination; Campbell, J., concurred in the result. *State v. Mains,* 295 Or 640, 665, 669 P2d 1112 (1983).

to reject on the merits Sparklin's claim for more elaborate warnings than those required by *Miranda.* Had the court not first concluded that Oregon law independently required warnings before interrogation, it could never have reached a question what those warnings should be.

The plurality should not so readily denigrate its recent opinions as "assumptions" and *"dicta."* I doubt that the court would welcome seeing a trial court or the Court of Appeals dismiss in that fashion a directive that is stated in the terms used in *Mains.* In fact, the Court of Appeals in this and in other cases correctly understood that *Sparklin* required cautionary warnings as a matter of state law; only the circumstances under which they are required was disputed. *State v. Smith,* 70 Or App 675, 680, 691 P2d 484 (1985); *State v. Rowe,* 79 Or App 801, 720 P2d 765 (1986); *State v. Kell,* 77 Or 199, 712 P2d 827 (1986).

But I leave to members of the plurality whether it is more embarrassing to say that they did not mean what they wrote or joined in *Mains* and *Sparklin,* or that they did not know their own minds. Conceding that judges like other mortals may change their minds, the present decision on its own merits is a wrong and backward step.

## II.

The plurality opinion begins by reciting the history of Oregon cases that dealt with the voluntariness of extrajudicial confessions. The common-law rule that an involuntary confession or admission must be excluded is not in dispute. That rule applies whether or not law enforcement officers caution a detained person before questioning. If the plurality wants to show that Oregon decisions did not hinge *voluntariness* on prior warnings, the recitals are needless; that, too, is not in dispute.

The issue, rather, is what the constitutional and statutory provisions add to common-law "voluntariness" in restraining official efforts to obtain incriminating information from a present or potential defendant. None of the quoted cases before *State v. Mains, supra,* decided that issue. It was not decided or even discussed in *State v. Henderson,* 182 Or 147, 183 P2d 392 (1947), or in *State v. Nunn,* 212 Or 546, 321 P2d 356 (1958), on which the plurality chiefly relies. As the

plurality opinion acknowledges, the question was expressly left open for future decision in *State v. Neely,* 239 Or 487, 295 P2d 557 (1965).[4] It was discussed and decided three years ago in *State v. Mains* and *State v. Sparklin.* Warnings based on Article I, section 12, or drawn by analogy from the statutes that effectuate it need not "overrule the *Henderson* line of cases" concerning voluntariness, as the plurality suggests. Neither *Mains* nor *Sparklin* purported to overrule anything. Rather, it is the plurality that now disowns its three year old opinions in those two cases.

## III.

Arguments about precedents can show the weakness of a judicial opinion, but to little effect. As I have said, a judge who thinks he was wrong may change his mind. Today's decision is wrong on its own merits.

The plurality itself treats its recital of the earlier cases only as a prologue to its conclusion. The conclusion does not purport to follow from the quoted opinions. Rather, the plurality's retreat from our 1983 opinions expressly rests on its rejection of a need for *Miranda* warnings in Oregon, at least at this time. The plurality singles out "police brutality" as the reason why *Miranda* warnings may once have been needed elsewhere but are not needed in Oregon today. If courts explain a rule of law as a deterrent to "police misconduct," it is little wonder if law enforcement officers and some members of the public think that the judges are against the police. Nor are warnings before questioning simply a matter of judicial convenience, to be abandoned if they do not reduce the "case load," as the plurality suggests. The practice of explaining a detained person's rights before questioning has a legal footing independent of any police misconduct or numbers of appeals.

As to the first argument, I do not know how the conduct of Oregon police officers compares with that of police officers elsewhere. The record before us contains nothing about that, nor should it. A rule should not be derived from

---

[4]The plurality opinion erroneously implies that *State v. Neely,* 239 Or 487, 295 P2d 557 (1965), rejected a claim under Article I, section 20. 301 Or at 694-95. The *Neely* court said that "we need not determine that issue at this time" because it was settled by federal law. Since *Neely,* of course, this court has corrected the past practice of applying federal limits on state laws before deciding state issues.

stereotypes and judicial generalizations about police conduct that differs over time, from one place to another, and with respect to different kinds of crimes, suspects, and circumstances. What we may assume about a rule of law is that officers (or others) ordinarily will abide by the rule; when a rule requires a search warrant or a cautionary warning, officers will obtain a warrant or give a warning, and if the rule allows them to search without a warrant or to question people without informing them of their rights to counsel and to remain silent, officers ordinarily will search or interrogate without seeking a legally unnecessary warrant or volunteering gratuitous advice not to answer their questions. We may assume this, not as an empirical fact, but because any rule is premised on the assumption that it affects and guides conduct, especially official conduct, unless it is known never to be enforced.[5]

The plurality says that Oregon should be satisfied to return to the common-law rules governing the exclusions of "involuntary" confessions as they stood at the time of *State v. Henderson,* if the Supreme Court of the United States would let it. *Henderson* was decided almost 40 years ago. Under that standard, law enforcement officers could pursue their questioning of any person in their own way and in any setting, leaving it to later dispute and adjudication whether the answers were "voluntary." It is hard to believe that this court in the 1980s would wish to return to the 1940s and 1950s and revive all the problems that led the United States Supreme Court 20 years ago to conclude that *ad hoc* determinations of voluntariness were inadequate to safeguard due process of law, let alone the rights to counsel and against self-incrimination.

No generation would choose to relive that history unless it has forgotten it. I shall not recount it in detail here. In sum, for 30 years after *Brown v. Mississippi,* 297 US 278, 56 S Ct 461, 80 L Ed 682 (1936), the Supreme Court granted *certiorari* in case after case to review convictions based on confessions to state officers. Some of the confessions, as in *Brown,* had been obtained by physical torture, some by long, uninterrupted questioning of an isolated prisoner by relays of officers, and some by playing on the inexperience and fear of

---

[5]The Oregon Evidence Code even enacts as statutory presumptions that "official duty has been regularly performed" and "the law has been obeyed," OEC 311(j), (x).

young, black, or ignorant suspects, and by denying them access to legal counsel or to family or friends. *See Chambers v. Florida,* 309 US 227, 60 S Ct 472, 84 L Ed 716 (1940); *Ashcraft v. Tennessee,* 322 US 143, 64 S Ct 921, 88 L Ed 1192 (1944); *Haley v. Ohio,* 332 US 596, 68 S Ct 302, 92 L Ed 224 (1948); *Watts v. Indiana,* 338 US 49, 69 S Ct 1347, 93 L Ed 1801 (1949); *Turner v. Pennsylvania,* 338 US 62, 69 S Ct 1352, 93 L Ed 1810 (1949); *Harris v. South Carolina,* 338 US 68, 69 S Ct 1354, 93 L Ed 1815 (1949); *Payne v. Arkansas,* 356 US 560, 78 S Ct 844, 2 L Ed 2d 975 (1958); *Crooker v. California,* 357 US 433, 78 S Ct 1287, 2 L Ed 2d 1448 (1958); *Cicenia v. LaGay,* 357 US 504, 78 S Ct 1297, 2 L Ed 2d 1523 (1958); *Spano v. New York,* 360 US 315, 79 S Ct 1202, 3 L Ed 2d 1265 (1959); *Rogers v. Richmond,* 365 US 534, 81 S Ct 735, 5 L Ed 2d 760 (1961); *Haynes v. Washington,* 373 US 503, 83 S Ct 1336, 10 L Ed 2d 513 (1963). Some of the cases involved "police brutality," others did not, nor even "police misconduct," unless intensive questioning before letting a suspect see a defense lawyer or a magistrate is first defined as misconduct.

Because the Supreme Court had not then held the states to the express constitutional standards of the federal Fifth and Sixth Amendments, the Court reviewed these cases only for "due process of law" under the Fourteenth Amendment, and it held that "involuntary" confessions (though not denial of access to counsel) violated due process.[6] One effect was to turn the "voluntariness" of every confession into a federal constitutional question to be decided by appellate courts, including the United States Supreme Court. Eventually, of course, the court recognized the rights to remain silent, to the assistance of counsel, and to the exclusion of unlawfully obtained evidence as essential elements of due

[6]In a related development, the Supreme Court found a subconstitutional premise for limiting police questioning in federal prosecutions by excluding statements obtained after a defendant should have been brought before a magistrate. *McNabb v. United States,* 318 US 332, 63 S Ct 608, 87 L Ed 819 (1943); *Mallory v. United States,* 354 US 449, 77 S Ct 1356, 1 L Ed 2d 1479 (1957).

Voluntariness continues as an independent requirement of due process, both on the theory that "certain interrogation techniques, either in isolation, or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment," *Miller v. Fenton,* 474 US ____, 106 S Ct 445, 449, 88 L Ed 2d 405, 410 (1985), and as an element that a jury must be permitted to consider as bearing on the credibility of a confession. *Crane v. Kentucky,* 476 US ____, 106 S Ct 2142, 90 L Ed 2d 636 (1986).

process, and it formulated the *Miranda* warnings as necessary to safeguard against the uninformed, thoughtless or frightened sacrifice of those rights.

The striking fact about the Supreme Court's cases under the "voluntariness" standard extolled by today's plurality opinion is that in each case a state trial court let a jury find that the defendant's confession was voluntary. In each case, a state appellate court affirmed that finding before the Supreme Court held that, on the undisputed facts, the confession was involuntary.

The plurality says that it is important to keep Oregon law on involuntary confessions and admissions intact. Of course it is. No one suggests that reading a suspect a statement of his rights does away with the rule against involuntary confessions or admissions. Obviously a suspect may still wrongfully be induced to confess by "hope or fear," *State v. Wintzingerode,* 9 Or 153, 163 (1881), after the warnings have dutifully been read to him. But in Oregon, too, the fact is that despite repeated recitals of the rule, not once has this court actually found a confession "involuntary" by reason of the coercive pressures of police questioning, although a few cases have excluded confessions induced by promises of leniency.[7] But the requirement of warnings, as I have said, has independent legal footing.

IV.

What Article I, section 12, of the Oregon Constitution guarantees is that no person "be compelled in any criminal prosecution to testify against himself." As the United States Supreme Court recently repeated:

> "The privilege against self-incrimination enjoined by the Fifth Amendment is not designed to enhance the reliability of the fact-finding determination; it stands in the Constitution for entirely independent reasons. *Rogers v. Richmond,* 365 U. S. 534, 540-541 (1961) (Involuntary confessions excluded 'not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying

---

[7]*See State v. Ely,* 237 Or 49, 390 P2d 348 (1964); *State v. Linn,* 179 Or 499, 173 P2d 305 (1946); *State v. Green,* 128 Or 49, 273 P 381 (1929); *State v. Garrison,* 59 Or 440, 117 P 657 (1911).

principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system')."

*Allen v. Illinois,* ___ US ___, 106 S Ct 2988, 2995, 92 L Ed 2d 296, 308 (1986).

Article I, section 12, like other constitutional provisions, is addressed to the conduct of public officials, not to the reaction of the individual private citizen. It forbids acts designed or likely to compel self-incriminating answers. That a person in fact gives no such answer does not exonerate acts of the proscribed kind, any more than a fruitless search yielding no seizure exonerates a failure to obtain a required warrant. The application of Article I, section 12, therefore poses an issue beyond the common-law test whether a particular confession in fact was "voluntary." Application of Article I, section 12, corresponds to the United States Supreme Court's shift in the 1960s from its earlier, unsatisfactory, "due process" review of confessions deemed "involuntary" on appeal to the direct application of the Fifth (and the Sixth) Amendment to investigatory practices. For an Oregon court, unlike the federal courts, the difference between "voluntariness" and application of Article I, section 12, requires no shift at all, because the direct application of the state's own guarantees in its courts does not depend upon any intermediate "due process" clause.

The present issue, then, concerns the role of cautionary warnings in giving effect to those guarantees. On this issue, ORS 135.070(1) and 136.435, and their predecessors are important. This court need not, like the United States Supreme Court in *Miranda v. Arizona,* set out to derive mandatory warnings directly from the Constitution. ORS 135.070(1) describes exactly the essential rights of which a suspect should be aware before he makes any statement that could be used as evidence (or could lead to evidence, ORS 136.435) against him.

Of course the statutes do not expressly address police officers. If they did, this case would not be here. To the plurality, since the statutes do not mention investigative stages and officials other than magistrates' hearings, they do not "apply" and are irrelevant. That narrow view of legislation long ago was criticized by Chief Justices Harlan F. Stone

and Roger Traynor, among others.[8] The long-standing laws requiring magistrates to inform defendants of their rights are important because they establish three principles of this state's policy. First, they obviously mean to protect the privilege not to testify against oneself rather than to prevent the coercion of a false confession. Second, the legislature chose warnings as the proper means to assure that the privilege was not waived out of ignorance. Third, they provide that failure to follow these steps should lead to exclusion of the resulting evidence.

The policy of the statutes clearly is independent of the common-law rule excluding "involuntary" confessions. Testimony elicited before a magistrate who has not cautioned the defendant (and evidence obtained thereby) "shall not be admissible, over the objection of the defendant," no matter how voluntary the defendant's statements may have been. The statutory test for admitting a defendant's statements against him is not phrased in the terms of voluntariness alone

---

[8]Chief Justice Stone wrote 50 years ago:

"The reception which the courts have accorded to statutes presents a curiously illogical chapter in the history of the common law. Notwithstanding their genius for the generation of new law from that already established, the common-law courts have given little recognition to statutes as starting points for judicial lawmaking comparable to judicial decisions. They have long recognized the supremacy of statutes over judge-made law, but it has been the supremacy of a command to be obeyed according to its letter, to be treated as otherwise of little consequence. The fact that the command involves recognition of a policy by the supreme lawmaking body has seldom been regarded by courts as significant, either as a social datum or as a point of departure for the process of judicial reasoning by which the common law has been expanded.

"* * * * *

"* * * I can find in the history and principles of the common law no adequate reason for our failure to treat a statute much more as we treat a judicial precedent, as both a declaration and a source of law, and as a premise for legal reasoning. * * * Apart from its command, the social policy and judgment, expressed in legislation by the lawmaking agency which is supreme, would seem to merit that judicial recognition which is freely accorded to the like expression in judicial precedent. But only to a limited extent do modern courts feel free, by resort to standards of conduct set up by legislation, to impose liability or attach consequences for the failure to maintain those or similar standards in similar but not identical situations, or to make the statutory recognition of a new type of right the basis for the judicial creation of rights in circumstances not dissimilar."

Stone, *The Common Law in the United States,* 50 Harv L Rev 4 (1936). *See also* Landis, Statutes and the Sources of Law, in Harvard Legal Essays 213 (1934); Traynor, *Statutes Revolving in Common-Law Orbits,* 17 Cath U L Rev 401 (1968).

but in terms that require a waiver—the "intentional relinquishment or abandonment of a known right or privilege," as we recently wrote about a guilty plea entered without an adequate statement by the judge of the right to confrontation that is relinquished by the plea. *Stelts v. State*, 299 Or 252, 259, 701 P2d 1047 (1985) (*quoting Johnson v. Zerbst*, 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461 (1938)).

In view of these principles long ago adopted by the legislature, it cannot well be said that protection of the privilege against self-incrimination by requiring warnings before questioning does not accord with the public policy of this state. On the contrary, it *is* the state's public policy when a judicial officer rather than an executive officer becomes responsible. Rather than consider the statutes irrelevant, the court should ask why this public policy is negated simply by having the unwarned suspect incriminate himself under questioning by police officers before a magistrate belatedly explains his rights not to do so, and to have the assistance of counsel.

In today's structure of professional law enforcement, the statutory policy of protecting the privilege against self-incrimination and the right to counsel by warning against uninformed waiver requires those warnings earlier than when a defendant first is brought before a judge.[9] I shall not argue at length at what stage of confrontation between an officer and the person being questioned the warnings should be required. I stated my own views on that issue in the setting of police investigation of drivers of stopped vehicles in *State v. Roberti,*

---

[9]Before development of organized police forces and full-time prosecutors, prosecutions were brought by private citizens and defendants were questioned for the first time when brought before a magistrate or justice of the peace. English magistrates were forbidden to interrogate an accused person by statute in 1848, shortly before Oregon required the warnings now found in ORS 135.070(1), and the famous Judges' Rules requiring British police officers to give similar warnings grew from the assumption that "what was forbidden to the magistrate as a judicial officer was also forbidden to the police." Williams, *Interrogation Privileges and Limitations Under Foreign Law: England,* 52 J Crim L Criminology and Police Sci 50, 53 (1961).

On the changes brought by the shift of administration of criminal justice, especially investigation, to executive institutions, *i.e.,* police and prosecutors, and the consequences for the privilege against self-incrimination and the right to counsel, *see generally* Kamisar, Police Interrogation and Confessions 51-55 (1980); Note, *An Historical Argument for the Right to Counsel During Police Interrogation,* 73 Yale L J 1000 (1964).

293 Or 59, 91, 644 P2d 1104 (1982), and I later joined Justice Lent's opinion when it became the majority opinion, 293 Or 236, 646 P2d 1341 (1982), before being once again reversed on remand by the United States Supreme Court, 298 Or 412, 693 P2d 27 (1984).

Justice Jones's concurring opinion in this case notes that the defendants in *Mains* and *Sparklin* were in custody, and he would confine the requirement of warnings before questioning to that situation. I do not believe that the words "formal" before "arrest" and "full" before "custody" are distinctive legal concepts, and factually they have no obvious bearing on whether police questioning is either designed or likely to be perceived as "compelling" a responsive answer. I believe that a rule addressed to public officers must describe the conditions in which it applies from the perspective of the officer who is to follow it. This does not mean warnings whenever an officer asks questions of bystanders or other witnesses. It means that the officer should give warnings corresponding to those prescribed by ORS 135.070(1) and to the federal *Miranda* warnings whenever the officer knows that he is using official authority to detain the individual whom he questions, or when as a reasonable officer he should know that the individual, or a reasonable person in the individual's position, would believe that the officer is using his authority to detain him until he answers the officer's questions. The pressure to respond when confronted and detained by police authority is sufficiently like the pressure to respond when taken before a magistrate that the same precautions are needed. In the case before us, I believe that this test probably would lead a trial judge to find that warnings should have preceded questioning, but of course the trial judge was not applying this test.

To conclude, I have refrained from stating that Article I, section 12, itself requires warnings before questioning. Sometimes it is unavoidable to spell out in detail how a broad constitutional principle is to be administered, but there is no need for a court to freeze details into constitutional law when guidance can be found in laws like ORS 135.070(1) and 136.435 that can be further considered and refined by the ordinary lawmaking process. Regrettably, the court's present approach is to say that if the legislature wants to protect the rights of Oregonians beyond the inescapable minimum that

this court finds in the constitution itself, the legislature is free to do so. I believe, to the contrary, that a court should assume that individual liberty is to be protected unless and until politically accountable lawmakers legislate to the contrary and force the constitutional issue. "It is the government that must ask lawmakers for authority against the citizen, not the citizen that must ask lawmakers to enact laws against 'inherent' official power." *State v. Brown*, 301 Or 268, 298, 721 P2d 1357 (1986) (Linde, J., dissenting).

Today's plurality opinion would take Oregon back 40 years and overturn all that has been learned about the inadequacy of excluding "involuntary" confessions as a protection for the constitutional right against self-incrimination, if the United States Supreme Court did not bind Oregon to more civilized national standards than the plurality ascribes to our own laws. It is a reminder that, despite recent progress in many state courts, people in Oregon as elsewhere still need the protection of federal law for the basic liberties common to the national and the states' bills of rights.[10]

Lent, J., joins in this dissenting opinion.

---

[10]Justice Brennan recently told the American Bar Association:

"[W]e must not be beguiled with thinking that, because state supreme courts are increasingly evaluating their state constitutions and concluding that those constitutions should be applied to confer greater civil liberties than their federal counterparts, we can safely ignore the deterioration being worked on Fourteenth Amendment protections. We can and should welcome this development in state constitutional jurisprudence—indeed, my own view is that this rediscovery by state supreme courts of the broader protections afforded their own citizens by their state constitutions·* * * is probably the most important development in constitutional jurisprudence of our times. * * *

"But this most welcome development does not mean that we can stop resisting cut-backs, particularly by the Supreme Court of the United States, of Fourteenth Amendment protections. One of the great strengths of our federal system is that it provides a double source of protection for the liberties of our citizens. Federalism is not served when the federal half of that protection is crippled."

"The Fourteenth Amendment," address by Justice William J. Brennan, Jr., American Bar Association Section on Individual Rights and Responsibilities, New York University Law School (August 8, 1986). *See also* Cabranes, *The Need for Continued Federal Protection of Individual Rights*, 15 Conn L Rev 31 (1982).